### RUSSELL v. KERN.

(Circuit Court of Appeals, Seventh Circuit. July 10, 1895.)

No. 231.

1. APPEAL—ASSIGNMENTS OF ERROR.
  Error is assignable upon an order or ruling, but not upon the opinion of the court or the reasons given for the ruling. Caverly v. Deere, 13 C. C. A. 452, 66 Fed. 305, followed.

2. PATENTS—EQUITY JURISDICTION—DISCRETION OF COURT.
  Patents which have expired can afford no basis for equitable relief in respect to infringement; and, in respect to a patent which expires just after filing of the bill, and before the return day of the subpoena, it is within the discretion of the court to dismiss the bill for want of equity. 64 Fed. 581. affirmed.

3. SAME.
  Where ten patents to the same person, all relating to one machine, were sued on, and four of them had expired before the bill was filed, and a fifth expired before the return day of the subpoena, and the others were found by the court to be invalid because for the same invention as that covered by the first five, held, that the bill was properly dismissed for want of equity. 64 Fed. 581, affirmed.

4. SAME—FLOUR-PURIFYING MACHINES.
  The Smith patents, Nos. 187,923, 194,539, 208,936, 236,101, and 258,142, for a middlings-purifying and flour-dressing machine, are void, because granted to the same person for the same inventions covered by Nos. 133,898, 137,-495, 154,770, 158,992, and 164,050. 64 Fed. 581, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This was a suit in equity by John H. Russell against John F. Kern, surviving partner of the firm of J. B. A. Kern & Son, for infringement of certain patents for purifying middlings and dressing flour. The case was first heard on demurrer to the amended bill. 58 Fed. 382. Afterwards the bill was further amended, and defendant again demurred thereto, which demurrer was sustained, and the bill dismissed for want of equity. 64 Fed. 581. Complainant appeals.

Story B. Ladd, Geo. E. Sutherland, Halbert E. Paine, and Belva A. Lockwood, for appellant.

N. C. Gridley and L. M. Hopkins, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. Error is assignable upon an order or ruling, but not upon the opinion of a court or the reasons given for a ruling. Caverly v. Deere, 13 C. C. A. 452, 66 Fed. 305. Of the assignment in this record only the first and fifth specifications were necessary or proper. They are to the effect that the circuit court erred in sustaining the demurrer to, and dismissing for want of equity, the second amended bill. It was filed March 19, 1894,—the

original bill having been filed May 31, 1892,—to obtain an accounting and damages for infringement, and an injunction against further infringement, of 10 letters patent of the United States issue to Geo. T. Smith, of which the numbers and the dates of issue and of the applications therefor, respectively, are as follows: No. 133,898, December 10, 1872, October 31, 1872; No. 137,495, April 1, 1873, October 12, 1872; No. 154,770, September 8, 1874, August 17, 1874; No. 158,992, January 19, 1875, May 20, 1872; No. 164,050, June 1, 1875, July 12, 1871; No. 187,923, February 27, 1877, December 18, 1876; No. 194,539, August 28, 1877, September 8, 1874; No. 208,936, October 15, 1878, August 29, 1878; No. 236,101, December 28, 1880, November 2, 1880; No. 258,142, May 16, 1882, January 4, 1873. The claims of these patents are as follows:

No. 133,898: "The brushes, H, H, when attached to an endless belt chain, rope, or an equivalent of the same, and traveling in one direction on ways and around pulleys, as shown, in combination with a reciprocating bolt, substantially as set forth."

No. 137,495: "The herein-described process of manufacturing flour from middlings, by subjecting them to successive grindings, boltings, and intermediate purifications by currents of air, substantially as set forth."

No. 154,770: "In a middlings purifier, a reciprocating shaker having its bolting surface contracted at the discharging end, with a corresponding reduction in the air passage through the same, substantially as set forth."

No. 158,992: "(1) Two or more reciprocating bolting surfaces or shakers, through which a current of air passes, separated from each other by longitudinal partitions, the cloth upon one shaker differing in fineness from the cloth on the other shaker or shakers, thereby adapting them for receiving and bolting flour or middlings of different grades of fineness, substantially as set forth. (2) In combination with two or more reciprocating bolting surfaces or shakers, through which a current of air passes, the cloth upon one shaker differing in fineness from that of the other, a preparatory bolt constructed to divide the flour or middlings into different grades of fineness, the finer grade being delivered to the shaker which is clothed with the finer cloth, and a coarser grade to a coarser cloth, substantially as set forth."

No. 164,050: "The combination, in a machine for dressing flour or middlings, of a bolting surface through which an air current passes in one direction, while the flour or middlings pass in the other, with a brush, or a series of brushes, which traverse the under side of the bolting cloth, to remove the adhering particles of flour, substantially as set forth."

No. 187,923: "(1) The combination, in a flour-dressing machine, of a reciprocating shaker, having bolting cloth of different degrees of fineness, an air chamber arranged above the shaker, and divided into sections by transverse partitions, and a conveyor below the shaker, whereby the middlings may be divided into grades of fineness, and subjected to air currents of different degrees of strength, and afterward intimately remixed for a second purification, substantially as set forth. (2) The combination, in a flour-dressing machine, of a reciprocating shaker clothed with bolting cloth of different degrees of fineness, an air chamber arranged above the shaker, and divided into sections by transverse partitions, a fan arranged above the air chamber, and having an air trunk for each section of the air chamber and a brush traversing the under surface of the bolting cloth, substantially as set forth."

No. 194,539: "The combination, with the bolting surface, in a middlings purifier, of two fans in fan cases, which do not communicate with each other, each fan operating to produce independent air currents, in separate and distinct compartments, and through different sections of the reciprocating bolting cloth, substantially as set forth."

No. 208,936: "The combination, in a middlings purifier, of the following elements, namely, a shaking bolter provided with bolting cloths of different degrees of fineness; a fan to produce air currents through the bolting cloth; a bolting chest, which surrounds the bolter and forms part of an inclosed air

trunk, through which air currents pass after leaving the bolting cloth; valves for regulating the strength of the air currents, according to the size of mesh of the bolting cloth; and a chamber in the eduction passage for collecting light material carried off from the bolter by the air currents."

No. 236,101: "(1) The combination, in a middlings purifier, of a reciprocating screen clothed with cloths of different degrees of fineness, a fan for causing air currents to pass upward through the screen, and the chest which incloses the screen and forms an air trunk, by which the air entering below is directed through and escapes above the screen through a contracted tubular discharge, and provided with apertures which are made of different areas opposite the various sections of the screen, for the purpose of regulating the force of the current through such sections, substantially as set forth. (2) The combination, in a middlings purifier, of a reciprocating screen clothed with cloths of different degrees of fineness, a suction fan placed above the screen, a chest which incloses the screen and forms an air trunk between the air openings below and the fan above the screen, and adjustable openings placed opposite the different sections of the screen, whereby the force of the current may be regulated to the texture of the cloth and material to be treated, and the material raised by the fan is carried away through the tubular mouth of the fan case, substantially as set forth. (3) The combination, in a middlings purifier, of a fan and reciprocating screen clothed with cloths of different degrees of fineness, a chest which incloses the screen and forms an air trunk, causing the entire current to pass through the screen, and constructed with transversely elongated and adjustable openings extending across the cloth, so as to equalize the action of the atmospheric currents upon the material traversing the sieve, substantially as set forth. (4) In a middlings purifier, in combination with a suction fan and reciprocating screen clothed with cloths of different degrees of fineness, a chest forming a portion of a continuous wind trunk inclosing the screen, and an auxiliary wind trunk connecting the fan with the interior of the chest through a series of openings of different areas placed opposite to the different sections of the bolting cloth, substantially as set forth. (5) The combination, in a middlings purifier, of a reciprocating screen clothed with cloths of progressively coarser mesh, a fan for causing an air current through the screen, a chest which incloses the screen and forms part of a continuous wind trunk to conduct the air put in motion by the fan through the entire extent of the screen, and controlling its delivery after it has passed through the screen, and a contracted tubular air discharge, whereby a film of middlings is subjected to a current of air uniform across the width of the screen and continuously increasing in force as the residuum becomes continually coarser and the cloth proportionately increases in coarseness of mesh, substantially as set forth. (6) The combination, in a middlings purifier, of a screen having cloths of different degrees of fineness, a fan, and chest, which incloses the screen and directs the air currents through the entire series of cloths while the middlings pass from the finer to the coarser sections, a hopper which collects the middlings as they fall through the cloths, and a conveyor and slide for remingling the middlings from two or more cloths after they have separately passed through cloths adapted to their several sizes, substantially as set forth."

No. 258,142: "(1) In a middlings purifier, a vibrating screen, the cloth of which is formed in sections of increasing coarseness of mesh, and which is provided with supports for the cloth intermediate between its edges, to maintain the cloth in plane, substantially as set forth. (2) In a middlings purifier, a vibrating screen, the cloth of which is formed in increasing coarseness of mesh, and which is provided with supports for the cloth intermediate between its edges, to maintain the cloth in plane, in combination with a casing forming a wind trunk, extending from the fan case to the screen, so as to direct a current of air put in motion by the fan through the entire extent of the screen, whereby the middlings, if fed uniformly across the head of the screen, are subjected to the action of atmospheric currents substantially uniformly across the entire width of the cloth, and which increases in force as the meshes become coarser and coarser and the particles of middlings upon the screen become relatively coarser, substantially as set forth. (3) In a middlings purifier, a vibrating screen, the cloth of which is formed in sections of increasing coarse-

ness of mesh, and which is provided with supports for the cloth intermediate between its edges to maintain the sections of cloth in plane, in combination with a casing which forms a continuous wind trunk, extending from the fan case to the screen, so as to direct a current of air put in motion by the fan through the entire extent of the screen, and a cloth cleaner acting against the surface of the screen for keeping its meshes open, substantially as set forth."

The patents bearing numbers below 164,050 all expired before the suit was commenced, and therefore, as the circuit court held, afforded no basis for equitable relief. No. 164,050 expired just after the filing of the original bill, but before the return day of the subpœna; and, for that reason, it was within the discretion of the court to dismiss the bill in respect to that patent for want of equity. Keyes v. Mining Co., 15 Sup. Ct. 772. The court also regarded it as "fully anticipated by No. 133,898." In respect to the later and unexpired patents, the view of the court was that they "were covered by those of earlier issue, and invalid under the rules declared in Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310; Oval Wood Dish Co. v. Sandy Creek, N. Y., Wood Manuf'g Co., 60 Fed. 285; Heald v. Rice, 104 U. S. 737." The accompanying drawings, taken from patent No. 236,101, are identical with the drawings of No. 164,050, and

Fig. 1.

Fig. 2.

Fig. 3.

not essentially different from those of Nos. 133,898, 194,539, 208,936, and 258,142, No. 137,495 being without drawings.

In the specification of No. 164,050, issued upon the first of the applications, the machine and its method of operation are thus described:

"In the accompanying drawings, A represents a hopper, into which the material to be bolted is delivered from an elevator, or by any other means. The material is fed by the roller, B, to the bolt, b, the amount of feed being regulated by the slide, c. The bolt is arranged in a chamber, through which a current of air is made to pass by means of a fan, D, the air entering through suitable openings, C, in the side of the bolt chest, the construction and arrangement of parts being such that the air is compelled to pass upward through the bolt cloth. The bolt or shaker is suspended from the framework by means of pivoted links, r, r, and has a reciprocating motion imparted to it by the eccentric, $R^1$, on shaft, R, and the inclosing box, I. As the material is agitated by the motion of the bolt, the flour falls through, while the smaller particles of bran are taken up by the current of air and carried off. As there is a continual current of air in an upward direction through the bolt, it will cause the very fine particles of flour and middlings to adhere to the thread of which the cloth is composed, and close up the meshes to such an extent as to interfere materially with the operation of the device. In order to obviate this objection, and maintain a free passage of the air and middlings, I employ brushes to traverse the under side of the cloth and keep it clean. H, H, are the brushes attached to and carried by endless belts, h, the brushes being supported upon ways, k, k, during their contact with the bolt. By preference, I make the framework and ways which support the brushes adjustable by means of set screws, $b^1$ (see Fig. 2), so that I can keep the brushes always in contact with the bolt. It is evident that the brushes would act upon the bolt equally well if they had a reciprocating motion, instead of being driven continuously in one direction by the endless belts or chains, although I regard the method shown for operating them as being the cheapest and most convenient, and also better adapted for doing the work. I am aware that a combination of brushes and air currents has been used in connection with flour bolts for many years; but in such machines the air current passed through the bolting surface with the flour; hence it could not, by any possibility, be made to perform the same functions as it does in my machine, one of which is to float a portion of the bran and refuse upon or above the bolting surface, and thus cause such particles to pass off at the tail of the bolt, instead of going through the cloth with the flour or clean middlings."

A minute comparison of the specifications and drawings of the several patents with reference to the claims of each is not necessary. It would serve only to demonstrate more clearly the facts so explicitly affirmed in the bill, that the Smith purifier is "one compact machine," of which the different parts described in the several letters patent are incapable of separate use, and that the machine itself is incomplete and incapable of use without the patented parts. We therefore make only a brief additional statement.

In No. 154,770 the discharging end of the shaker or bolting surface, which by preference is divided by two or more longitudinal ribs, is, by means of wedge-shaped blocks, made of less width than the receiving portion, and the area for the passage of air currents correspondingly reduced. A division of the chamber above the shaker into sections by means of partitions is also illustrated, and declared to be preferred.

In No. 158,992 the cloth on the two or more longitudinal sections into which the shaker is divided is of different degrees of fineness, and in connection therewith is to be used a preparatory or grading

bolt, which is illustrated in the old form of a reel, though of course it may be a mere duplication of the horizontal shaker described. The chamber is divided by vertical partitions arranged immediately above the ribs which divide the shaker, and the apertures from the several apartments of the chamber are provided with dampers for regulating the air currents. An adjustable swing board, hinged upon the gather boards below the shaker, is employed "to regulate the proportion of flour or middlings which shall be delivered to each conveyor."

In No. 187,923, the first of the unexpired patents, the shaker is divided into sections by longitudinal ribs, but the chamber above is divided, by transverse instead of longitudinal partitions, into three sections, each provided with a regulating damper, and the cloth of the shaker is of three grades, arranged so that the middlings will pass first over the finest, and last over the coarsest, grade.

In No. 194,539 there is shown a machine made by placing in juxtaposition two or more of the machines already described, each having its own fan, chamber, cloth conveyor, and other parts, and acting independently of the other. In order to admit the air freely to the central portion of the shaker, openings in the gather boards are provided.

In No. 208,936 special mention is made, and the utility explained, of the shelves, n, in the air chamber, which, according to the specifications and claim, serve the purpose of "collecting light material carried off from the bolter by the air currents." The same shelves are shown in the drawing (Fig. 3) of 133,898, 164,050, and 187,923, but are not mentioned in any of the claims thereof.

No. 236,101 contains the same drawings as No. 164,050, and differs from the earlier and expired patents only in the wording of its claims.

The same is true of No. 258,142, the last of the series, of which the patentee, after acknowledging that "some of the important combinations included in this machine" are covered by the patents already taken out "in other divisions," declares the object to be "to cover all patentable points not covered by any such prior patents."

Special significance has been attributed to some of the averments of the bill. It is alleged, for example. "that the said George T. Smith's middlings purifier is one compact machine, operating together as a whole, parts of which are covered by the letters patent" mentioned, but no part thereof "covered by any other patent than those specified herein"; "that George T. Smith was the original inventor of said machine"; that, on July 12, 1871, he filed his application for a patent, about October 23, 1871, filed a caveat for "further improvements, and, on May 20, 1872, applied for letters thereon,"—which applications and caveat practically covered all the devices and patents mentioned,—but that, owing to alleged interferences and litigation thereon, Smith subsequently "made special applications for parts of his said invention not included in the alleged interference"; but "that the primitive idea of said George T. Smith was the invention of a machine made up by the devices" described; that all the patents "relate to the same subject-matter, to wit, the purifying of middlings by the same general mode, to wit, the ground grain

is fed forward through a shaking screen having progressively coarser meshes, while a current of air draws backward through the screen from below and lifts the coarse or light particles of bran or husk, while permitting the heavier or finer particles of nutritious flour to pass through the screen"; that the machine has no utility or practical value without the use of the patented devices mentioned, or their equivalents; that the devices "are not capable of separate use for the purposes designed; that the purifier is not capable of use without them," and that "the devices in such combination constitute the essential features of said machine, and are necessary to a complete running machine"; that, after the issue of No. 133,898, which was for one only of the mechanical devices set forth in the applications of July 12, 1871, and May 20, 1872, the issue of the other patents was suspended to await the result of the interference declared between Smith, "claiming under the said applications so filed by him, and Benjamin Barter, who claimed under letters patent No. 125,518, issued on the 9th day of April, 1872, for an improvement in the method of dressing flour," a copy of which, with accompanying specifications, is made a part of the bill; that the interference was declared in June, 1872, for the purpose of ascertaining whether Barter, claiming under letters patent No. 125,518, or Smith, claiming under his applications of July 12, 1871, and May 20, 1872, and caveat of October 23, 1871, "was the original inventor and discoverer of the inventions described in said patent (No. 133,898) and said applications for patents"; and that the interference was decided November 14, 1874, in favor of Smith.

In the case of Miller v. Manufacturing Co., supra, after a review of authorities, the supreme court declared the conclusion that "no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim more generical in its character than the specific claims contained in the prior patent, is also void; but that, where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby and claims made thereunder, its validity may be sustained." See, also, Fassett v. Manufacturing Co., 10 C. C. A. 441, 62 Fed. 404. Whether or not under these rules any of the first five of the patents here sued on are invalid we need not consider. It is clear that, singly or all together, they cover Smith's invention, and the machine in which it was embodied, so completely as to leave no room for further distinct and separable claims.

The allegation of the bill that, after the granting of No. 133,898, "the issue of other patents was suspended to await the result of the interference," can in no sense be true in respect to Nos. 187,923, 208,936, and 236,101, which were not applied for until after November 14, 1874, when the interference was determined. No. 194,539, too, was not applied for until September 8, 1874, and the interference affords no reason why that patent was not issued until August 28, 1877, nor why No. 258,142 was not issued until May 16, 1882. Besides, the interference was declared for the purpose of determining

the right of Smith, as against Barter, to the inventions covered by letters No. 133,898, the applications of July 12, 1871, and May 20, 1872, and the caveat of October 23, 1871. The patents granted upon those applications were Nos. 158,992 and 164,050. It was, therefore, only the claims of the three patents, 133,898, 158,992, and 164,050, which were involved in the interference, and there was no reason for suspending action upon other applications, unless they were for the same inventions. If they were for the same inventions, they ought not to have been granted, and, having been granted, are invalid. That the earlier "applications and caveat practically covered all the devices and patents mentioned" is alleged in the bill. The allegation is manifestly true, and consequently the patentee was without justification for making "special applications for parts of his said invention not included in the alleged interference." There were no such parts. It may be observed, too, that the features of the later patents are all described and illustrated in the patent of Barter, a copy of which is made an exhibit in the bill. If, therefore, they were not included in the interference and did not so become the established property of Smith under the three patents mentioned, then they belong to Barter, if included in his claims, and, if not to him, then to the public, because of his failure to claim them.

It is doubtless true, as contended, aside from any right to an injunction, that there may be ground for jurisdiction in equity in the nature and circumstances of the account, and in the necessity for discovery; but in respect to the expired patents, which are here assumed to be valid, it is not shown that the remedy at law would be inadequate.

The decree of the circuit court is affirmed.