SMART v. WRIGHT.

(Circuit Court of Appeals, Eighth Circuit. September 7, 1915.)

No. 4455.

1. APPEAL AND ERROR ☞854—SCOPE OF REVIEW—GROUNDS OF DECISION.
   Error is not assignable to the reasons for a decree given in the court's opinion.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3403, 3404, 3408–3424, 3427–3430; Dec. Dig. ☞854.]

2. PATENTS ☞112—SUIT FOR INFRINGEMENT—DEFENSES—EFFECT OF INTERFERENCE PROCEEDINGS.
   The failure of a party to an interference proceeding in the Patent Office to make any showing or take any testimony does not estop him to claim that he was the original inventor in subsequent litigation for infringement.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ☞112.]

3. PATENTS ☞92—PERSON ENTITLED TO PATENT—JOINT INVENTION.
   Where a machine was the joint product of two men, who built it together, neither can secure a valid patent therefor as the sole inventor.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. ☞92.]

4. PATENTS ☞328—ANTICIPATION—TIE PLUG MACHINE.
   The Smart reissue patent No. 13,579 (original No. 956,207), for a machine for making tie plugs, held void for anticipation.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by Harry G. Smart against Frank M. Wright. Decree for defendant, and complainant appeals. Affirmed.

Amasa C. Paul, of Minneapolis, Minn., for appellant.
Arthur P. Lothrop, of St. Paul, Minn., for appellee.

Before HOOK, Circuit Judge, and ELLIOTT and YOUMANS, District Judges.

YOUMANS, District Judge. Appellant brought suit in the court below against appellee for the alleged infringement of reissued letters patent, of date June 17, 1913, No. 13,579, as a reissue of letters patent No. 956,207, dated April 26, 1910. The subject of the original and reissued letters patent was alleged to be a new and useful improvement in tie plug machines.

The answer sets up six defenses: (1) That the appellee, and not the appellant, was the original inventor of the tie plug machine forming the subject-matter of the patent alleged to be infringed. (2) That appellee manufactured and used the tie plug machine with the full knowledge, consent, and license of the appellant. (3) That the reissued letters patent covered a different invention from the original patent, and are therefore invalid and void. (4) That the appellee had acquired intervening rights between the issue of the original patent and the grant of the reissue, which entitled him to have the use of the ma-

chine. (5) Noninfringement. (6) That the patent in suit was void in view of the prior art.

In an opinion filed in the case, the trial court held against each of these defenses except the sixth. The decree, however, was in the following terms:

"This case came on to be heard at this term and was argued by counsel orally and by briefs; and now, upon due consideration thereof, it is ordered, adjudged, and decreed as follows, viz.: That the bill be dismissed, and that defendant recover from the plaintiff his costs and disbursements, to be taxed."

The decree does not state upon what defense or defenses the bill was dismissed. There are eight assignments of error, as follows:

"(1) The District Court erred in holding that claim 1 of the Smart patent in suit No. 956,207, is void. (2) The District Court erred in holding that claim 2 of the Smart patent in suit No. 956,207, is void. (3) The District Court erred in holding that claim 3 of the Smart patent in suit No. 956,207, is void. (4) The District Court erred in holding that claim 4 of the Smart patent in suit No. 956,207, is void. (5) The District Court erred in holding that claim 5 of the Smart patent in suit No. 956,207, is void. (6) The District Court erred in holding that all of the elements of the claims in suit, or their mechanical equivalents, are found in the Garland & Cronkhite machine, patent No. 778,962, where they do substantially the same work by substantially the same means. (7) The District Court erred in holding that every element of the Garland & Cronkhite machine, patent No. 778,962, is adapted to perform the same general function as the corresponding element in the Smart machine of the patent in suit, and that all of the elements in both structures have the same organized relations, perform the same functions, and are capable of producing the same results. (8) The District Court erred in dismissing the bill of complaint."

[1] It will be noted that all of the assignments of error, except the eighth, are directed to something other than the decree. They are, in fact, directed to the reasons given in the opinion for the decree. Error is not assignable to reasons given for rulings or orders. Caverly v. Deere, 66 Fed. 305, 13 C. C. A. 452; Russell v. Kern, 69 Fed. 94, 16 C. C. A. 154; McFarlane v. Galling, 76 Fed. 23, 22 C. C. A. 23; Crawford v. Fayetteville Lumber & Cement Co., 212 Fed. 109, 128 C. C. A. 623. Therefore the only assignment of error available to the appellant on review is the eighth, which assigns error for the dismissal of the bill. Under that assignment the consideration of all the testimony taken in the case is involved.

1. For some years prior to May, 1907, appellant and appellee were partners, conducting a woodworking establishment or sash and door factory at St. Cloud, Minn., under the firm name of Wright & Smart. With a view of securing from the Great Northern Railway Company a contract for the making of tie plugs, it was suggested that the firm build a tie plug machine. The testimony is conflicting as to the source of the suggestion, whether from appellant or appellee. The construction of such a machine was begun in the shop of the firm in the month of January, 1907. Four witnesses testify as to the construction of this machine—the parties to this suit, and two men who were working in the shop at the time, McCarthy and Skanter. Wright testified that he made a sketch in accordance with which the machine was constructed, and he is corroborated by the witness McCarthy. Smart testified that the machine was constructed under his direction by the witness Skan-

ter, and the latter corroborates Smart. The machine was completed in the month of April, 1907, and was used at once by the firm in filling contracts for tie plugs. The firm was dissolved in May following, and the interest of Smart in the firm business and property was bought by Wright. The tie plug machine was regarded as belonging to the firm. With reference to the selling of his interest in the business and the disposition of the tie plug machine, Smart testified as follows:

"He [Wright] had made a proposition for my interest in the business close to 6 o'clock in the evening. In the afternoon I told him I would like to have till 7 o'clock to consider the matter; wanted to talk it over with my wife. When I got back at that time, I says to Wright, or asked Wright, rather, if he intended to continue in the plug business. He says, 'No, I have lost enough money and am not going to lose any more.' I said, 'Mr. Wright, if you will let me have the plug machine, we will call it a trade.' He says, 'No, I wouldn't do anything of the kind;' he says, 'You claim an interest in the glue press back there. You may have my interest in the plug machine for the glue press. If you will allow me to keep the plug machine until I have finished up the back orders, it is a trade;' and I says, 'All right.'"

With reference to that point Wright testified as follows:

"Q. Did you have any conversation with Mr. Smart about the tie plug machine at that time? A. Yes; I told him we had lost money so far with that plug machine, and that I believed I could build a machine that would cut more plugs. Q. Did you have any conversation before the papers were signed about the machine? A. That was not at the time the papers were signed; that was before that. We lost money with the sort of plugs cut at that time with the old machine—that old single machine. Q. Did you have any conversation with Mr. Smart, after the papers were signed, about the machine that was built, after the papers were signed and the transfer made? A. Not any more than when we made the trade. Q. The trade was made before? A. Traded after. He had an interest in a glue press. The patterns were made in the shop by our men but I think the company who did the work on this glue press was the Granite City Iron Works, so he claimed he owned the glue press. This took place in the Headquarters Saloon at St. Cloud. He wanted to know if I would trade him the old plug machine for his interest in the glue press, and says, 'You are going to make a new one, and will not need that.' Mr. Smart asked if it would be in the road, and I said it would be all right. This machine could stay in the building until I had my other machine made, and then it was to be delivered to him, whenever he called for it."

[2] The plug machine remained in Wright's possession until he had completed another, which constituted the alleged infringement. There is nothing in the testimony to indicate that up to the time of the dissolution of the firm the intention existed on the part of either appellant or appellee to apply for a patent. After the dissolution, and after the appellee had constructed the second machine, the idea occurred to each one of the parties to forestall the other in securing a patent. Upon suggestion in the Patent Office of an interference as between the claims of appellant and appellee, and proceedings thereunder, the following order was entered:

"Whereas, Wright, the junior party, having failed to make any showing why judgment on the record should not be rendered against him in view of the fact that he failed to take any testimony; and

"Whereas, the date allowed for such action has expired in pursuance of the notice dated March 31, 1913, priority of invention of the subject-matter in issue is hereby rendered in favor of Harry G. Smart, the senior party."

That adjudication does not estop the appellee from making the defenses set up in his answer. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Christie v. Seybold, 55 Fed. 69, 5 C. C. A. 33.

[3] Prior to the dissolution of the firm, neither member made any claim to invention. All the facts in testimony concerning the construction and use of the machine lead to the conclusion beyond reasonable doubt that the machine was the result of the joint thought and action of the two men, Wright and Smart. That being the case, neither of them could secure a valid patent as sole inventor. American Patent Diamond Dop Co. v. Wood et al. (C. C.) 189 Fed. 391; Worden v. Fisher (C. C.) 11 Fed. 508; Thomas v. Weeks, Fed. Cas. No. 13914; Arnold v. Bishop, Fed. Cas. Nos. 552 and 553.

[4] II. The defense of anticipation was fully made out by the testimony. The machine was intended to make plugs from small strips or pieces of wood, and these plugs were about 4 to 4½ inches in length. The machine is provided with a suitable table whereon strips from which the plugs are to be formed are placed. An endless chain carrier travels over the table, and is provided with lugs which project above the surface of the table engaging the strips and carrying them over the table and through the machine. At the back of the table is a suitable guide plate against which the ends of the plugs are placed, and as the plugs are carried forward they are brought into engagement with a suitable saw, by which they are cut off to the proper length. As the plugs are carried across the top of the table, after leaving the saw, their ends are engaged by cutter heads that are arranged one above and the other below the table. The upper cutter head bevels off the upper surface of the end of the plug, and the lower cutter head bevels off the lower surface of the same plug. In order to hold the plugs while they are being operated on as above stated, there were provided a presser bar and two spring bars. The presser bar had one end secured to a pin fastened in the guide plate. The spring bars were designed merely to assist the presser bar in holding the plug blanks in place. The contention of the appellant is that the presser bar and its method of attachment were the improvements which distinguished his machine from other machines and constituted the element of patentability. It was shown in testimony that the entire combination composing appellant's alleged invention was included in a prior patent to Garland & Cronkhite. In the latter patent there were presser bars which were functionally the same as the presser bars of the Smart reissued patent.

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function, in substantially the same way, to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact that the corresponding

device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained. Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really do the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. Cahoon v. Ring, 1 Cliff. 620." Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

The only difference between the devices for holding in position the material operated on in the Garland & Cronkhite machine and the devices performing the same office in the Smart machine was with reference to the method of attachment. As shown by the testimony, that method was included in the Brown patent, which was prior to the Smart patent. The Smart patent was not a new combination composed of old elements. It was an old combination, all the parts of which were well known to the prior art. It was therefore not patentable.

The decision of the lower court was correct, and it is affirmed.

HOOK, Circuit Judge, concurs in the result.

NOTE.—The following is the memorandum opinion of Morris, District Judge, in the court below:

I do not think that the defense of intervening rights can be sustained. As to that defense I think counsel for plaintiff correctly states in his brief the rule and its application in this case.

Nor do I think that it can be found under the evidence, especially in view of the interference proceedings in the Patent Office and the strict rule of proof resulting therefrom, that the defendant, Wright, was the first and true inventor of the machine covered by the reissue patent, and that defense cannot, therefore, be sustained.

The evidence, to my mind, shows clearly that the Wright machine was constructed with the knowledge of Smart prior to his application for patent, but fails to satisfy me that it was with his consent. Therefore that defense must fail.

Nor do I think that the defense that the claims, or any of them, are invalid because they are a departure from the disclosure of the original or the reissue application and patent can be sustained. It is conceded by both sides that the plaintiff's machine for which the reissue patent was issued and the defendant's machine show the same combination of elements and are practically the same, except as to the double construction of defendant's machine, and the manner in which the presser bar is mounted on the pin. Without following counsel in the many refinements of their discussion of the mounting on its pin of the presser bar, it seems to me entirely clear that, if the claims of the patent involved here are valid, they are infringed by the defendant's machine. In other words, I do not think the fact that the defendant's presser bar is loosely mounted on or secured to the pin will save an infringement of any of the claims, whether those claims be construed as meaning that the presser bar has a flexible end rigidly secured to the pin, (as I think they must be in claims 1, 2 and 3), or not. The defense, therefore, of noninfringement, must fail, if the claims in suit are valid.

The sole question then remaining is as to the validity of the claims in suit. If they are invalid, it must be so by reason of anticipation and lack of invention over the prior art. It seems to me that the general combination of elements shown in the reissue patent here in suit and in the claims thereof under consideration is presented in its entirety by the Garland & Cronkhite structure, and if there is any novelty in these claims it must be found in

the specific presser bar mechanism described therein. And this, as I understand it, is the ground on which the plaintiff's counsel contends that they must be sustained.

I do not think this case falls within that class of cases, cited by counsel for plaintiff, in which it is stated that "it constitutes no anticipation and no defense to a claim of infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third." On the contrary, it seems to me that counsel for defendant in his reply brief has pointed out the true principle applicable to this case, and that it comes within the last sentence of the clause quoted from above in the opinion of Judge Sanborn in Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co., 215 Fed. 362, in which he says: "It is indispensable that all of them, or their mechanical equivalents, may be found in the same description or machine, where they do substantially the same work by the same means."

Where the combination of elements in a set of claims is disclosed in a prior patent, and the claims depend for patentability upon specific features of a single element of that combination, then, if these specific features are shown in another existing patent, or in other existing patents, of a machine or machines used for analogous purposes, so that they would readily, without the exercise of the inventive faculty, suggest themselves to a skilled mechanic, such claims are void. A combination of elements, to be patentable, where the elements are separately old, must be, not a combination shown in a prior patent, but a new combination, in which these several old elements are reorganized. This is not true here. The combination shown in the reissue patent is not a new method of combining old elements. The combination and the method of combining the old elements are the same as in the Garland & Cronkhite machine, and the feature of novelty does not reside in a new combination of old elements, but in the specific modification or improvement of one of the elements of that combination, namely, the presser bar, and, if the specific features of this element as well as the combination are old, then the claims must be held to be void. Nor does it produce a new and useful result different from that produced by the Garland & Cronkhite machine.

All of the elements of the claims in suit, or their mechanical equivalents, are found in the Garland & Cronkhite machine, where they do substantially the same work by substantially the same means. Every element in this machine is adapted to perform the same general function as the corresponding element in the Smart machine, and all of the elements in both structures have the same organized relations, perform the same functions, and are capable of producing the same result. It seems to me that a skilled mechanic, having before him a machine of the Garland & Cronkhite patent, and knowing of the various forms of presser bar mechanism employed in machines in the woodworking art, as shown by prior patents for machines in that art (see exhibits offered by defendant, especially the patent to Brown, No. 97476, and the patent to Wilson, No. 664,306), would readily, without the exercise of the inventive faculty, substitute for the specific form of presser bar, or presser fingers, shown in the Garland & Cronkhite machine, the form of presser bar shown in the Smart machine.

I do not think it matters that the presser bars, or elastic pressers, in the Brown patent, and in the Wilson patent, do not extend across the table and beyond the cutters. I think any mechanic could see at a glance that similar presser bars, made narrower than those in the Brown patent, if necessary, could be made to extend beyond the cutters as far as might be necessary. Nor do I think it matters that in the Brown patent only the point of the presser bar engages the top of the shingle or piece of material operated upon. I think any mechanic could see at a glance that a similar presser bar might be so made and extended as to engage along all or a part of its length the piece of material operated upon, and while it was being operated upon by many separate tools.

I do not agree with counsel for plaintiff that the Garland & Cronkhite machine is not adapted to and cannot make tie plugs out of the small plug blanks which are used with the Smart machine. It seems to me that it is so

adapted and can do so, and that the additional machinery for sawing the boards, after they have been beveled, into tie plugs, could be dispensed with, if small plug blanks were used. I think it has the means of holding the small independent plug blanks in position, certainly if the fingers *1b* were extended; and such extension, it seems to me, would suggest itself to any mechanic at a glance.

It seems to me, therefore, that the claims here in suit must be held to be void, and that the bill should be dismissed.

---

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes