### GEORGE v. PERKINS.

(Circuit Court of Appeals, Eighth Circuit. September 29, 1924.)

No. 6584.

1. Patents ⬤328—59,736, for garment protector, held invalid.

George design patent, No. 59,736, for rubber baby pants to protect garments, *held* invalid, because patentee was not sole inventor.

2. Patents ⬤90(7)—Plaintiff held not sole inventor of design.

Where plaintiff, desiring to manufacture rubber garment protector of good appearance, was told of suitable machine by agent therefor, who perfected device by which attractive border could be produced, plaintiff was not sole inventor of design of such border.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit in equity by Maude Sinclair George against Robert F. Perkins. Decree for defendant, and plaintiff appeals. Affirmed.

William H. Schaumberg, of St. Louis, Mo., for appellant.

Asher Blum, of New York City (Hugo Mock, of New York City, and E. E. Huffman, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge. This is a suit in equity, based upon the alleged infringement of a patent, in which the plaintiff, appellant here, seeks an accounting and a perpetual injunction. The defendant, appellee here, interposes as defenses that the plaintiff was not the original or sole inventor of the design upon which the patent was secured; that the patent was void for lack of novelty, void in view of the prior art, and void on account of the article not being a proper subject for a design patent, being merely utilitarian in its nature. Upon the final hearing, the trial court found that the plaintiff was not the true inventor, that

the patent was void, and dismissed the bill at plaintiff's costs. The plaintiff appeals, and here contends that this was error.

[1, 2] The record discloses substantially the following facts: The patented article in controversy is what would be commonly known as rubber baby pants, having for a general purpose the protection of the outer garments of the infant, with a ruffled effect provided by an elastic band holding the garment tightly and securely around the body and legs. Letters patent were issued to the plaintiff November 22, 1921, upon an application theretofore made in May of that year, under the term "design for a garment protector," and carrying No. 59,736. The defendant was found selling garments of a similar design, and received notice from the plaintiff of the alleged infringement of her patent.

The evidence shows that the method of holding garments secured by an elastic or string, thereby involving a ruffled effect, had been in practical use many years prior to plaintiff's patent; familiar examples of this being in the case of bloomers and boys' waists. The claim of plaintiff as to the patentable nature of the article lies in the shirred or ruffled effect of the garments at the openings, made possible by the elastic held in place by a peculiar stitching, known as a covering stitch, which secures the elastic in place, permitting freedom in extending or distending, and concealing the elastic in such manner as, with the ruffle, to form a sort of artistic border. It seems that the plaintiff had in mind some sort of a design for a garment of the general nature here outlined, and with this in view consulted several manufacturers, finally going to one Guy, who told her about a machine which effected a chain stitch; this machine having been in common use for several years. Thereupon Guy volunteered to order the machine, to enable plaintiff to determine whether it would perform acceptably, and after its arrival Guy perfected a device for the machine which would hold the elastic extended upon the garment while it was being secured by the stitch, so that, when released, it would fit securely around the body and legs of the infant, and at the same time effect the attractive border design. The story of the first interview between plaintiff and Guy is revealed by the record in plaintiff's own language as follows:

"Well, this garment, with the elastic on the outside, as I said before, didn't sell well, because it didn't look nice. It may have been strong enough, and functioned

well enough for holding it in place, but it didn't sell good, because it wasn't pretty. So, in my desperation to get a garment that would sell well, I called on the different machine companies in town here, such as the Singer, Wilcox and Gibbs, and the Stein. I asked Mr. Guy, who was the agent, if it wasn't possible to get a machine that would embroider this elastic and cover it on the baby pants, so that it would do the work and look pretty; that I wanted something that would look well, because the appearance must be good. He said, 'Mrs. George, I think I can;' and he showed me a little piece of silk, or some kind of material, with some stitching on it. He says, 'I believe I could arrange some attachment that would run this rubber under this stitching, and if you like me to try that I will send for the machine and you can try it out; if it does the work you can buy it; if not, I will take it away from you.' Well, under those conditions, I gave him an order."

It therefore develops that about the only thing the plaintiff had in mind was something in the nature of a rubber garment protector, already in existence, but which would present a good appearance. Upon this suggestion, Guy told the plaintiff about the machine, which made a peculiar kind of stitch, and, after the machine had been ordered, he perfected a device by which the elastic while extended could be attached to the garment, producing the border hereinbefore outlined. Under these circumstances the trial court was undoubtedly correct in holding that the plaintiff was not the true inventor.

In the case of Forgie v. Oil-Well Supply Co., 58 F. 871, at page 877, 7 C. C. A. 551, 557, involving similar circumstances, the court says:

"Admitting that he may have had some conception of what was wanted—which, however, is very doubtful—mere conception is not invention. It is the crystallizing of that conception into the invention itself, operative and practical, that entitled the inventor to the protection of letters patent."

In the case at bar, the crystallization of the conception into the form of an invention was substantially the act of Guy, and not that of plaintiff.

The Court of Appeals of the District of Columbia, in the case of Pembroke v. Sulzer, 265 F. 996, at page 998, 49 App. D. C. 356, 358, uses the following language:

"We fully agree with the Examiners in Chief that nothing more was disclosed to Pembroke by Sulzer's agent, Haste, than a result to be accomplished, and that Pembroke is the real inventor of the subject-matter of these claims."

Even admitting that the design was patentable, and that the plaintiff had a conception of what she desired, the very practical and efficient part which Guy had in the finished design would make plaintiff a joint rather than a sole inventor, and thereby defeat her claims in this proceeding. In the case of McKinnon Chain Co. v. American Chain Co. (C. C. A.) 268 F. 353, the court, at page 360, says:

"As both Hoff and Coulter had at one time—the crucial time—worked together for a common end, which was finally accomplished by the contributions and united efforts of both, we are of opinion, after applying familiar law to the facts, that the invention was the invention of both, and was therefore joint invention."

In Smart v. Wright, 227 F. 84, at page 87, 141 C. C. A. 632, 635, this court has used the following language:

"All the facts in testimony concerning the construction and use of the machine lead to the conclusion beyond reasonable doubt that the machine was the result of the joint thought and action of the two men, Wright and Smart. That being the case, neither of them could secure a valid patent as sole inventor."

All the cases cited refer to numerous additional authorities, which it will not be necessary to cite here, and neither will it be necessary to consider the other points raised by the defense, for the reason that the trial court was undoubtedly correct in disposing of the case upon the propositions here considered.

The decision of the trial court will be and is affirmed.