GEORGE FRANKE SONS CO. v. WIEBKE MACH. CO., Inc.

No. 2003.

District Court, D. Maryland.

Feb. 6, 1933.

France, McLanahan & Rouzer, of Baltimore, Md., for plaintiff.

Williams, Rich & Morse, of New York City, and Venable, Baetjer & Howard, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The plaintiff sues in equity to enjoin the defendant from continued infringement of United States letters patent No. 1,837,752, issued December 22, 1931, to the plaintiff as assignee of Henry H. Beneze, as inventor. As described in the opening sentences of the application—

"This invention pertains to tinsel winding machines and more particularly to that type designed to wind what are known in the trade as tinsel icicles."

"The main object of the present invention has to do with an improved means for grasping and holding the end of the strand of tinsel prior to the beginning of the winding operation thereof about a forming mandrel."

"A still further object of the invention resides in the provision of means whereby the grasping means just mentioned may be expeditiously operated both in the gripping and grasping operation as well as in the release of the tinsel;—a feature which materially speeds up production."

There is no doubt that the defendant made and sold three machines corresponding to the patent prior to the issuance of the patent, and claims the right to continue to make and sell such machines. The defense, however, is that the patent is void because the invention and machine therein described were not the invention of the applicant for the patent, Henry H. Beneze, who is the assignor of the plaintiff, but was first designed and made by the defendant himself. And this is admitted by the plaintiff who nevertheless contends that the patent issued is valid because the substantial invention therein described and patented was in fact conceived in principle although not in the form patented, by Beneze, the plaintiff's assignor. And it may be assumed, at least for the purposes of this opinion, that the invention actually conceived and built by Beneze into a machine would have been patentable, and if it had been patented the defendant's machine (which was the one actually patented) would have been an infringement of the Beneze invention, which, however, was not patented.

This situation, unique in patent law and practice so far as I am advised, was due to a mistake on the part of the patent counsel for the plaintiff which in turn was occasioned by insufficient or unintentionally misleading information supplied by the plaintiff. How this result came about is explained in some detail in the findings of fact which were made at the conclusion of the testimony and after argument of counsel in this case.

The circumstances, only briefly restated here for the purposes of clarity, are these: The plaintiff is a manufacturer of ornaments for Christmas trees and one of its officers on a trip to Germany in the fall of 1927, became acquainted with the manufacture there in a new form of icicles for Christmas trees made from silver tinsel on a machine largely operated by hand-power which was a very crude precursor of the machine which was finally patented in this case. On the return of the officer of the plaintiff corporation, the latter promptly undertook to have made a more finished machine for the manufacture of these tinsel icicles and first employed a Mr. Wiebke, president of the defendant corporation (who had for many years acted, as an independent contractor, as a machinist, for the plaintiff), to produce such a machine. In its first form such a machine was delivered to the plaintiff by Wiebke on December 27, 1927. It was unsatisfactory in performance and the plaintiff thereupon employed successively other mechanics to improve it. The main purpose was to speed up production of tinsel icicles to successfully compete with much less expensive German labor. In the course of perfecting the machine the plaintiff employed one Beneze who invented and devised and built a machine for the plaintiff which involved the substitution of a circular clamp attached to the forming needle or mandrel and movable on the mandrel (whereby the end of the tinsel, in the beginning of the winding operation, could be more expeditiously laid upon the mandrel when the circular sleeve or clamp was moved backwards, and then grasped by the sleeve when it was allowed to come forward) for a fixed spring or clamp movable with and not independently of the mandrel. This solved the problem of rapid mass production.

Beneze completed and delivered the machine to the plaintiff in the latter part of April, 1928, and it was put into operation in the plaintiff's factory. However, there were some other improvements and refinements in the machine which the plaintiff still desired to have made and he again employed Wiebke to make them. He showed the Beneze machine to Wiebke and asked him to im-

prove upon it. Wiebke did so, applying the principle that had been invented by Beneze in a somewhat different form and adding other improvements. The machine thus finally perfected was entirely satisfactory to the plaintiff and 23 of these machines were made, sold and delivered by Wiebke to the plaintiff during the summer of 1928. One of the plaintiff's officers conferred with Wiebke about patenting the machine, but was dissuaded by him from doing so, Wiebke saying that this would lead to unnecessary publicity and that he would respect the machine as belonging to the plaintiff and would not make or sell it to others. Later, without adequate reason, Wiebke broke this promise by selling one of the machines to the plaintiff's competitor, and thereupon the plaintiff, learning this, proceeded promptly thereafter to obtain a patent. He employed patent counsel and apparently furnished them with one of the machines as perfected by Wiebke, under circumstances from which patent counsel understood that Beneze was the inventor of the particular machine. In due course the patent was issued upon application of Beneze who, not being particularly interested, signed and swore to the patent application after only cursory examination of the papers.

We have, therefore, a situation in which Beneze was the real inventor of the principle of probably the only patentable feature of the machine actually patented, but the machine which was patented and precisely described in the patent application and specifications, was not the machine which had been invented or made by Beneze who applied for the patent.

At the trial of the case the machine which had been devised and made by Beneze was exhibited and also the machine as made by Wiebke and which had been patented. A visual comparison of the two showed at once the structural differences. The principal differences were as follows: Beneze provided as a clamp for the tinsel a circular *movable sleeve* sliding on a *fixed mandrel*. The sliding sleeve or collar was moved forwards and backwards by a lever attached immediately thereto and means were provided whereby the same device could also be used to cut off the end of the tinsel after the icicle had been completely wound on the mandrel. This cut-off feature finally proved to be unnecessary and was not included by Wiebke. The latter in his improved machine retained the device of a clamp caused by the relative movement of the mandrel and a sleeve, but substituted a *movable mandrel*

(that is, movable forwards and backwards) through a *fixed sleeve*. Wiebke also substituted for the hand-operated lever device attached directly to the movable sleeve of Beneze's machine, a foot pedal for the more convenient operation; and added another improvement consisting of an L-shaped member to carry and guide the tinsel on to the mandrel, and which, as a carriage, travelled along the length of the mandrel, thus evenly guiding the tinsel in the winding process.

The important question in the case, assuming the patentability of the Wiebke machine (prima facie established by the issuance of the patent by the Patent Office) and assuming further that the only patentable device was the principle of the clamp as invented by Beneze, utilized in the Wiebke machine in a different form, is whether, in these circumstances, the patent application having been made by Beneze as the inventor, is invalid. To answer this question requires consideration of the statutory patent law. In examining this we find the very great emphasis which is put upon the Act of Invention as the dominant feature of all valid patents. And we must bear in mind that the fundamental object of the patent law is to encourage invention rather than to promote private fortunes, as has been stated by the Courts.

Thus, the Constitution, in making the grant of power to Congress with respect to patents, provided: Article 1, § 8. "Congress shall have Power * * * To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

The statutory law necessarily follows the fundamental law and particularly emphasizes the important relation of the inventor to the patent. Thus, U. S. Code, title 35, § 33, 35 USCA § 33 (U. S. Rev. St. § 4888), provides as follows: *"Application for patent; description; specification and claim.* Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a *written description of the same, and of the manner and process of making, constructing, compounding, and using it,* in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the prin-

ciple thereof, and the best mode in which *he has contemplated* applying that principle, so as to distinguish it from other inventions; and he shall *particularly point out and distinctly claim* the part, improvement, or combination which *he claims as his invention or discovery*. The specification and claim shall be signed by the *inventor."* (Italics supplied.)

And U. S. Code, title 35, § 35, 35 USCA § 35 (U. S. Rev. St. § 4892), provides as follows: "The applicant shall make oath that he does verily believe himself to be the original and first inventor or discoverer of the * * * machine * * * or improvement for which he solicits a patent; that he does not know and does not believe that the same was ever before known or used. * * * "

It is further provided by U. S. Code, title 35, § 44, 35 USCA § 44 (U. S. Rev. St. § 4895), with regard to patents issued to an assignee of the inventor as follows: "Patents may be granted and issued or re-issued to the assignee of the inventor or discoverer; * * * And in all cases of an application by an assignee for the issue of a patent, the application shall be made and the specification *sworn to by the inventor or discover,* * * * "

█ It thus appears from this constitutional and statutory law that (a) the applicant for the patent must be the inventor who (b) must file a written description of *his* invention and (c) if a machine, must explain the principle thereof and (d) must particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery. It is well understood in the patent law that these statutory requirements must be carefully complied with.

In this case Beneze filed a written application as the inventor. As the patent was applied for on a particular machine, it was necessary for him to, and he did, describe the machine by particular specification with reference to detailed drawings. These specifications and drawings described in detail the Wiebke machine and not the Beneze machine. The application included the usual form of oath by the inventor in which Beneze stated that he "verily believes himself to be the original, first and sole inventor in improvements in tinsel winding machines described and claimed in the annexed specification." The oath was obviously in fact incorrectly and carelessly made although I think Beneze was acting in entire good faith and on advice of entirely reputable counsel. If the Patent Office had known the real facts it is utterly improbable that the patent would have been issued, although it may be assumed that if patent counsel had not been mistaken in their assumption that Beneze was the inventor of the particular machine, the application and specification might have been changed to describe the Beneze machine and the patent issued thereon.

While counsel have not referred me to any case presenting precisely the situation that exists here, the principle involved would seem to have been decided by the Supreme Court in the case of Kennedy v. Hazelton, 128 U. S. 667, 9 S. Ct. 202, 32 L. Ed. 576. The case there was a bill for specific performance by an employer against an employee who had agreed in writing to assign to the plaintiff any patents he might obtain for improvement of steam boilers. The employee did invent such an improvement but to evade his obligation procured it to be patented by one who was not in fact the inventor but who assigned the patent to the employee. The general equities of the case were obviously with the plaintiff but the court refused to award specific performance on the ground that the patent itself was void in the circumstances. The court said, at page 672 of 128 U. S., 9 S. Ct. 202, 203: "The patent law makes it essential to the validity of a patent, that it shall be granted on the application, supported by the oath, of the original and first inventor, (or of his executor or administrator,) whether the patent is issued to him or to his assignee. A patent which is not supported by the oath of the inventor, but applied for by one who is not the inventor, is unauthorized by law and void, and, whether taken out in the name of the applicant or of any assignee of his, confers no rights as against the public. Rev. St. §§ 4886, 4888, 4892, 4895, 4896, 4920 [35 USCA §§ 31, 33, 35, 44, 46, 69]."

Again in Eagleton Manufacturing Co. v. West, Bradley & Carey Mfg. Co. et al., 111 U. S. 490, 4 S. Ct. 593, 28 L. Ed. 493, the Supreme Court also held invalid a patent issued on application and oath of an alleged inventor who was in fact not the actual inventor of the patentable features of the patent.

The claims of the patent in suit are not applicable to the machine which Beneze in fact invented and made; or, in the language of the Patent Office, the claims of the patent do not "read on" the actual Beneze machine. The fundamental importance of the claims in patent law is elementary. As was said in Linville v. Milberger, 29 F.(2d) 610,

618 (D. C. Kan.) affirmed 34 F.(2d) 386 (C. C. A. 10): "The law is clear that the plaintiffs' claims mark the limits of his contract. Drawings and specifications may be resorted to as aids in a liberal construction, but cannot be resorted to in order to add to or subtract from his contract."

In McClain v. Ortmayer, 141 U. S. 419, 424, 12 S. Ct. 76, 77, 35 L. Ed. 800, the Supreme Court said: "The claim is the measure of his right to relief, and, while the specification may be referred to to limit the claim, it can never be made available to expand it."

In Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344, the Supreme Court said: "But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office. * * * As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim; or, if broader, they must be held to have surrendered the surplus to the public."

In White v. Dunbar, 119 U. S. 47, 52, 7 S. Ct. 72, 74, 30 L. Ed. 303, the same court said: "The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."

See, also, to the same effect, Motion Picture Patents Co. v. Universal Film Co., 243 U. S. 502, 510, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Minerals Separation v. Butte & Superior Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019.

The plaintiff invokes the doctrine in patent law of "substantial equivalents" and cites numerous cases to the effect that devices which are different in form but substantially the same in principle may be enjoined as infringements. But this patent law doctrine can have no proper application to this case because it assumes that the plaintiff holds a valid patent, which is, of course, the precise question here involved. The application which the plaintiff endeavors to make of this doctrine is that the claims should be broadly and liberally construed and that it takes only a slight amendment of the wording of the claims to make them properly descriptive of the Beneze invention. It is doubtful indeed if by the most liberal construction of the claims of this patent they could be interpreted to cover the Beneze machine. Possibly if it had been the actual intention to patent the Beneze machine and it had been illustrated in the drawings, a very liberal construction of the claims might have been allowed to make them fit the drawings of the machine. But to do so in this case would defy the realities of the situation; because it is admitted that the illustrated drawings are those of the Wiebke machine and not of the Beneze machine; and it is also admitted that the plaintiff's counsel was furnished with the Wiebke machine and not the Beneze machine for the patent application. The claims, therefore, as drawn by patent counsel and allowed by the Patent Office are precisely descriptive of the Wiebke machine and were not drawn with any thought at all of the Beneze machine which, indeed, it appears plaintiff's patent counsel had never seen before the patent was issued. And reference to the file wrapper of the patent shows the emphasis placed by plaintiff's counsel on the *movable* feature of the needle or *mandrel* through a *fixed sleeve* as an important characteristic of the machine to be patented, distinguishing it from a former patent cited by the Examiner in the Patent Office.

The plaintiff also seeks support for the patent in the doctrine of ancillary improvements as illustrated by the case of Agawam Woolen Co. v. Jordan, 7 Wall. (74 U. S.) 583, 602, 19 L. Ed. 177. As there stated, this doctrine is as follows: "Where a person has discovered an improved principle in a machine * * * and employs other persons to assist him in carrying out that principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention."

This doctrine might have been applicable to this case if the facts had been different. Thus, if an officer of the plaintiff corporation had himself hit upon the Beneze invention and had thereafter employed Wiebke to further develop it, then it would seem that the plaintiff's officer could properly have applied for the patent on the machine with the Wiebke improvements as the real inventor. But no such relation existed between Beneze and Wiebke. Beneze was employed by the plaintiff and made, sold, delivered and was paid for his particular machine, and that

concluded his relation to the matter until about two years later he was asked to apply for the patent in this case.

Nor can the patent be sustained on the basis of an invention jointly conceived by Beneze and Wiebke because the patent was issued to the assignee of Beneze alone and on his application as the *sole* inventor. Larson v. Crowther, 26 F.(2d) 780, 789 (C. C. A. 8); George v. Perkins, 1 F.(2d) 978 (C. C. A. 8); Smart v. Wright, 227 F. 84, 87 (C. C. A. 8); McKinnon Chain Co. v. American Chain Co., 268 F. 353 (C. C. A. 3); Ross & Co. v. Wigder, 290 F. 788 (C. C. A. 3); 48 C. J. 120, § 133.

I reach the conclusion that the patent is void for the reasons stated. But I do so with regret as the equities of the case as between the plaintiff and defendant are strongly with the plaintiff as I find the facts. However, the dominent question involved lies in the public policy of the law relating to patents which I conclude would be defeated if the patent is not held void.

A decree will be signed dismissing the bill with costs to be paid by the plaintiff.