REED v. CROPP CONCRETE MACHINERY CO. et al.

(District Court, N. D. Illinois, E. D. November 25, 1914. On Application for Rehearing, February 8, 1915.)

No. 30742.

PATENTS (§ 328*)—INFRINGEMENT—CONCRETE MIXER.

The Reed patent, No. 981,111, for parts of a concrete mixer, *held* not infringed by the device of a patent for which an earlier application was made.

In Equity. Suit by Matthew Howard Reed against the Cropp Concrete Machinery Company and Andrew J. Cropp. On final hearing. Decree for defendants.

Charles M. Clarke, of Pittsburgh, Pa. (Percival H. Truman, of Chicago, Ill., of counsel), for plaintiff.

Glenn S. Noble, of Chicago, Ill., for defendants.

SANBORN, District Judge. Infringement suit on patent No. 981,-111, issued to plaintiff January 10, 1911, applied for September 28, 1908, covering part of a concrete mixer.

The prominent feature of the patent is the so-called "low charge," enabling the raw material to be charged by a wheelbarrow into the lower front portion of the drum over the edge of the narrow front annular

flange into the front ends of the charging pockets. This enables the workman to wheel the raw material up to the machine and dump it thereinto, or into the charging chute leading inwardly to the front end of the machine, avoiding the necessity of high, steep inclined platforms, or of supplemental skip hoists, or other old arrangements for lifting the material and depositing it in the machine.

Two forms of the low-charge arrangement are illustrated and described in the patent, one utilizing an inner transverse head or disk set inwardly from the front end of the machine, having a plurality of peripheral openings and diagonally arranged blades extending forwardly and back therefrom, forming overlapping walls, contacting with the edges of the inner head, so that, as the drum rotates, the material will be automatically fed into the interior mixing compartment by the forwardly projecting diagonal blades, and also at the same time be prevented from returning to the front, by reason of the wiping or fending action of the rear blades. The other, a more simple construction, employs a series of diagonally arranged overlapping blades extending angularly backward 'from the front annular flange or head of the drum, forming a series of pockets surrounding a central opening, and constituting a continuous series of walls spaced backwardly from the front centrally open head. Defendants do not use or sell the first form.

The machine in each case is provided in its interior with additional mixing or lifting blades which operate to commingle and mix the material. It is also provided with discharge mechanism adapted to be opened and closed from time to time, to discharge portions of the mixed material. The claims declared on, and the feature of defendants' machines alleged to infringe the patent, relate only to the low-charge construction, embodying the diagonally arranged overlapping blades, and not to the discharge feature.

The gist of both the Reed and Cropp constructions is the overlapping blades which carry the material into the mixing chamber. Mr. Reed testifies that the special feature of his invention is the low-charging arrangement, through the use of the overlapping blades and their connections, and that he finds the same construction in the cuts shown in defendants' catalogues. It is also testified by Mr. Cropp that what he invented was blades having their front portion of substantially the same width as the disk, and their back portions widened, and that claim 9 in the Cropp patent contains the whole secret of his invention. That claim follows:

"9. The rotary mixing receptacle having at its receiving end a charging device consisting of a centrally apertured disk secured to the receptacle, and a series of blades extended at their outer ends from the disk inwardly and diagonally with respect to the receptacle for a short distance from the disk for the purpose of directing the material into the receptacle, said blades having their portions adjacent to the disk of substantially the same width as said disk from the opening therein to its periphery and their inner portions widened."

Cropp applied for his patent August 8, 1908, and Reed for his September 28, 1908. An earlier application was that of Morton F. Sanborn, and all three were thrown into interference in respect to a single claim. Cropp disclaimed, and Reed bought out Sanborn, whereupon

Reed was adjudged the first inventor, and the interference claim was awarded to him as claim No. 1. Patents were issued to all three of the parties to the interference. In the Reed and Cropp patents the claims relating to the low-charging feature are quite similar. This is apparent from a comparison of Reed's claim 7 and Cropp's claim 15, which follow:

Reed claim 7: "A concrete mixer consisting of a rotable drum having means therein to agitate and mix the material and a front annular inwardly extending retaining flange, a continuous series of circularly arranged charging pockets extending backwardly from said retaining flange having inlets opening toward the axis of the drum and adapted to deliver material to the interior of the drum, and means to introduce material to the inlets of the pockets from outside the drum."

Cropp claim 15: "In a mixer, in combination, a revoluble drum having an apertured disk at its receiving end, means within the drum to agitate and mix the material, a continuous series of circularly arranged charging pockets located at one end of the drum within its cylindrical wall and closed at their outer ends and having their outer portions of substantially the same width as the said disk from the opening therein to its periphery and their inner portions widened, and means to introduce material to the inlets of the pockets."

The apertured disk of Cropp is the same as the inwardly extending flange of Reed, and the only difference in the circularly arranged charging pockets is that Cropp describes the width and shape of the overlapping blades. Both claims read on the machine made and sold by each of the parties. Cropp being earlier than Reed, and the devices being so much alike (as well as the claims in each patent), it is difficult to see how there was much left for Reed which was novel. Cropp's disclaimer covered an element not found in his machine, and he did right to disavow all interest in the claim put in interference.

There is nothing worthy of attention in the testimony tending to show any date of the inventions earlier than the respective applications.

No infringement appearing, the bill should be dismissed, with costs.

## On Application for Rehearing.

Complainant moved for a rehearing on a number of grounds, chiefly that when the Patent Office, having issued one patent, grants another for the same invention, "this latter grant is a deliberate adjudication that the second applicant is the true first inventor, and raises a prima facie presumption that the later patent is valid rather than the first." On the contrary, the true and only presumption is that the patents are different. If they cover the same patentable field, the last is void. Thus in Miller v. Eagle Mfg. Co., 151 U. S. 186, 196, 14 Sup. Ct. 310, 314 (38 L. Ed. 121), Justice Jackson says:

"The drawings in each of the patents are identical, and the specification in each is substantially the same. Under these circumstances, can it be held that the second patent has any validity, or must it be treated as having been anticipated by the grant of the 1879 patent? If, upon a proper construction of the two patents—which presents a question of law to be determined by the court (Heald v. Rice, 104 U. S. 737, 749 [26 L. Ed. 910]), and which does not seem to have been passed upon and decided by the court below—they should be considered as covering the same invention, then the later must be declared void, under the well-settled rule that two valid patents for the same invention cannot be granted either to the same or to a different party."

This case was approved in the copyright case of Caliga v. Inter Ocean Newspaper Co., 215 U. S. 182, 189, 30 Sup. Ct. 38, 40, 54 L. Ed. 150, 152, where it is said:

"The first patent exhausts the statutory right secured by the act of Congress."

These rulings would seem to govern this case in all its respects. The only possibility of a different conclusion arises from the fact that there was an interference proceeding, as shown in the foregoing opinion, followed by Cropp's disclaimer and Reed's purchase of Sanborn's rights, thus leaving Reed entitled to the interference issue. No actual decision as to priority was made by the examiner of interferences or any other officer or board in the Patent Office as a matter of judicial action, but only by reason of the disclaimer and settlement. The matter all comes down to the effect of Cropp's disclaimer, which I think has already been correctly disposed of. A decision on interferences is not res judicata in the courts, although it is final on a later proceeding in the Patent Office. The peculiar character of such a decision will appear from three cases presenting different aspects of the question: Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657; Blackford v. Wilder, 28 App. D. C. 535; Id., 127 O. G. 1255; Westinghouse v. Hien, 159 Fed. 936, 87 C. C. A. 142, 24 L. R. A. (N. S.) 948 (Seventh Circuit). In this particular case the decision awarding priority to Reed was at the most a judicial action by consent, and not by the judgment of the examiner. Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U. S. 552, 11 Sup. Ct. 402, 34 L. Ed. 1005. Even in the Patent Office an award of priority is not an estoppel as between broad and narrow claims covering the same invention. Corry & Trout v. McDermott, 110 O. G. 306.

The motion for retrial should be denied.