REED v. CROPP CONCRETE MACHINERY CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1916. Rehearing Denied January 2, 1917.)

No. 2292.

1. PATENTS ⬡112(4)—PRIORITY OF INVENTION—DECISION OF PATENT OFFICE.
   A finding by the Patent Office in interference proceedings of priority of invention in favor of one applicant, and the issuance of a patent to him, creates a strong presumption that he was the first inventor as against the other parties to the proceeding, which can be overcome only by the most convincing and satisfactory evidence.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 165.]

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ⊕⟶106(2)—JUDGMENT IN INTERFERENCE PROCEEDINGS—SCOPE—DISCLAIMER.

Under rules of practice of the Patent Office No. 107, which provides that any party to an interference may file a disclaimer of the invention of "the particular matter in issue," in which case judgment shall be rendered against him', such a disclaimer only extends to the particular claim or claims as to which the interference has been declared, and the judgment following does not affect the question of invention as to other claims, although they may contain other interfering matter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 147.]

3. PATENTS ⊕⟶328—VALIDITY AND INFRINGEMENT—CONCRETE MIXER.

The Reed patent, No. 981,111, for a concrete mixer, claims 1, 2, and 11, *held* valid and infringed, claims 7, 12, 13, 17, 18, 19, 20, and 21 *held* not infringed by the patentee in the Cropp patent, No. 947,196, on the ground that whatever of patentable novelty is therein shown is covered by the prior Cropp patent.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by Matthew Howard Reed against the Cropp Concrete Machinery Company and Andrew J. Cropp. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 218 Fed. 643.

Appeal from decree dismissing for want of equity bill to restrain alleged infringement of certain claims of United States patent No. 981,111 to Reed. Appellant, Reed, and his company, the Standard Scale & Supply Company, were in the business of making and selling scales and gas engines, but not concrete mixers. Appellee Cropp was engaged in devising and constructing concrete mixing machines, and had used some of the Reed engines, which were adapted to furnish power for such machines. Late in 1907 Reed met Cropp at the Chicago Cement Show, and was evidently impressed with Cropp's ideas of concrete machinery, although Cropp then had no patents. Shortly afterwards they arranged an agreement for Cropp to make his mixers and sell them through Reed's company. Cropp began building machines, and under date of March 2, 1908, entered into a written contract with the company whereby it was to have the sole and exclusive right in the United States and elsewhere to sell "the concrete mixing machines devised and manufactured by or under the supervision of second party" (Cropp) for one year, and as much longer as they could agree; Cropp to receive a stipulated price for each machine. The Reed engine was to be used, and Cropp was to protect the company against actions for infringement.

The following May 7th they entered into another contract, superseding the first. By it the company on certain conditions assumed certain of Cropp's financial obligations, and Cropp conveyed to the company mixing machines and parts thereof as enumerated, and thereafter the company was to manufacture and sell the "Cropp mixing machine" and to have "the sole and exclusive right for the manufacture and sale of said concrete mixing machines in the United States" and all foreign countries, and the company "will provide for the manufacture of the Cropp mixers, furnishing all necessary material and labor," and Cropp agreed to superintend the manufacture and construction of the mixers and assist in their sale, and was to receive from the company $50 for each mixer sold up to 50, and $40 for each one in excess of 50. Cropp agreed as before to protect the company against actions for infringement in the use of his (Cropp's) "machine" or "devices." The term of the contract was until January 1, 1909, and as much longer as the parties could agree. The evidence is indefinite and uncertain as to what machines were constructed during the existence of the contractual relation.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

But it seems that at the time the second contract was made at least one machine had been completed, which embodied substantially the claims which. are the subject-matter of this litigation, except claims 1, 2, and 11.

August 8, 1908, Cropp filed in the Patent Office his application for improvements in concrete mixing machines. His patent, No. 947,196, was granted January 18, 1910; its general scope appears from his claims 9 and 15, which are typical of those that bear on this controversy, and read as follows:

"9. The rotary mixing receptacle having at its receiving end a charging device consisting of a centrally apertured disk secured to the receptacle, and a series of blades extending at their outer ends from the disk inwardly and . diagonally with respect to the receptacle for a short distance from the disk for the purpose of directing the material into the receptacle, said blades having their portions adjacent to the disk of substantially the same width as said disk from the opening therein to its periphery and their inner portions widened."

"15. In a mixer, in combination, a revoluble drum having an apertured disk at its receiving end, means within the drum to agitate and mix the material, a continuous series of circularly arranged charging pockets located at one end of the drum within its cylindrical wall and closed at their outer ends and having their outer portions of substantially the same width as the said disk from the opening therein to its periphery and their inner portions widened, and means to introduce material to the inlets of the pockets."

On September 28, 1908, Reed filed his application for the patent here in issue. In both applications, as well as in some of the claims of both the patents as granted, there is shown an inner head whose periphery contacts with that of the drum and which has openings near the outer edge for the materials to pass through. Each likewise shows claims for improvements in the discharging end of the drum, not here in issue. Various claims of Reed's patent describe a series of charging blades extending diagonally inwardly from the flange of the drum at the receiving end, the blades overlapping at their inner ends. It appears that August 14, 1908, between the filing dates of Cropp and Reed, Sanborn filed application for a patent for improvements on such mixers, having, like the other two, for one of its objects the introducing of material into the drum at one end near its periphery "enabling a low charging chute to be employed" and describing a series of diagonally and inwardly projecting blades and pockets not far different from the other two.

On suggestion from the Patent Office, Cropp and Reed incorporated in their applications Sanborn's claim 5, and thereupon interference was declared thereon; such claim being as follows: "In a mixer, in combination, a revoluble drum, means therein to agitate and mix the material, a continuous series of circularly arranged charging pockets located at one end of the drum within its cylindrical wall and closed at their outer ends, the open inlets of the pockets being turned toward the axis of the drum, a circular head having its periphery contacting with the tops of the pocket walls and set in from the adjacent end of the drum, and means to introduce material to the inlets of the pockets outside of said head."

Prior to the date fixed for filing preliminary statement, Cropp filed a disclaimer as to said claim, declaring he was not the first inventor thereof, and amended his application accordingly, whereupon his patent was granted. Thereafter Reed, by his attorney, also filed disclaimer of the claim, wherein it is recited that Sanborn had assigned to Reed his entire interest in the Sanborn application, and that Reed "hereby disclaims the subject-matter covered by said interfering claim, and requests said interference be dissolved and the claim allowed to Sanborn." The Patent Office dismissed Reed's disclaimer on the ground, among others, that it was not executed by Reed, but by his attorney. Thereupon there was filed in the Patent Office a concession of priority of the invention involved by Sanborn to Reed, which concession being found by the Patent Office to be in accordance with the rules, the claim in interference was awarded to Reed, and the patent in issue to Reed was issued January 10, 1911, wherein the claim in interference became the first claim of his patent. December 31, 1912, patent to Sanborn was

issued. The claims of the Reed and Cropp patents, barring Reed's claims 1 and 2 subsequently added, are substantially like those of their applications as of the time when Sanborn's claim 5 was suggested to them.

The relations between Cropp and Reed terminated at expiration of the contract. Cropp organized appellee Cropp Machinery Company, which proceeded to make Cropp mixers. The litigation between Reed and Cropp, and their respective companies, soon began, and has since been in active opera-

FIG. 1.

tion, although it does not appear that any considerable number of mixers have been made by either party. This action is based on an alleged infringement by Cropp and his company in making and selling two mixers to one Wahl, which it is claimed embody in their constructions claims 1, 2, 7, 11, 12, 13, 17, 18, 19, 20, and 21 of Reed's patent. The commercial Cropp machine, which also fairly shows the construction of the Wahl machines, as to which the infringement is charged, is shown by. Fig. 1.

Charles M. Clarke, of Pittsburgh, Pa., and Otto R. Barnett, of Chicago, Ill., for appellant.

Glenn S. Noble, of Chicago, Ill., for appellees.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). It is not seriously contended that claim 1 of the patent does not read upon the Wahl structure. The distinctive feature of this claim, viz. "a circular head having its periphery contacting with the tops of the pocket walls and set in from the adjacent end of the drum," is present in the disk or ring $D$. While the precise function of this inner contacting ring is not clearly shown by the evidence, it is apparent that it may serve the purpose of stiffening the blades and better holding them in relative position, as well as helping to form a sort of wall to keep the materials from flowing back into the charging end. In the many cuts of complainants' commercial machine shown in the catalogues in evidence, this inner ring or head is nowhere shown: but this would not warrant the use of it by another in violation of a valid patent therefor.

[1] The question of priority involved in the interference having been thus settled in Reed's favor, and patent including the claim in interference awarded to him, in this suit for infringement thereof against Cropp and his privies, there arises a strong presumption in favor of Reed's priority, which can be overcome only by evidence of a most convincing and satisfactory nature. Smart v. Wright (8th C. C. A.) 227 Fed. 84, 141 C. C. A. 632; Computing Scale Co. v. Standard Computing Scale Co. (6th C. C. A.) 195 Fed. 508, 515, 115 C. C. A. 418; Hillard v. Remington Typewriter Co. (2d C. C. A.) 186 Fed. 334, 108 C. C. A. 534; Novelty Glass Co. v. Brookfield (6th C. C. A.) 170 Fed. 946, 955, 95 C. C. A. 516; Stonemetz, etc., Co. v. Brown, etc., Co. (C. C.) 57 Fed. 601, 604; Kirk v. Du Bois (C. C.) 33 Fed. 252; Celluloid Mfg. Co. v. Chrolithian Collar & Cuff Co. (C.

C.) 24 Fed. 275; Wire Book Sewing Machine Co. v. Stevenson (C. C.) 11 Fed. 155.

But Cropp does not undertake to impeach his disclaimer by maintaining that he was the first inventor of the combination having this inner contacting head. On the contrary, he insists, not only that he did not invent it, but also that Reed was not the first inventor. It is claimed that the filing by Reed of a disclaimer in favor of Sanborn of the claim in interference of itself sufficiently shows that Reed was not the inventor. The record discloses a disclaimer by Reed of the claim in interference, which disclaimer the Patent Office dismissed as being irregular. Thereafter Sanborn filed a concession of priority of invention to Reed, as indeed the preliminary statements by Reed and Sanborn in the interference proceedings showed the invention to have been first made by Reed. These things are proper to be considered in evidence with all the other evidence on the subject of whether Reed was in fact the first inventor. If Sanborn was the original inventor of this feature, then Reed was not, and he could not in such case prevail upon his claim 1. These matters were before the Patent Office, and the patent was granted to Reed. We cannot hold that by merely showing the disclaimer of Reed, which was filed and subsequently dismissed by the Patent Office, Cropp, the alleged infringer, has thereby sustained his burden of establishing that Reed was not the first inventor; and so claim 1 must stand, unless otherwise overcome.

Patents to Ransome, No. 416,950, and McKelvey, No. 663,999, are cited in the prior art as to such use of the inner head or ring. We do not find disclosure in either of these patents responding to the elements of the combination of claim 1 in respect to an inner circular head having its periphery contacting with the tops of circularly arranged charging pockets, located as described in the claim. The record disclosing nothing further which would tend to show that Reed was not the first inventor of the combination with such inner contacting ring or head, appellees have failed to overcome the presumption that he was.

[2] Respecting claims 2, 7, 11, 12, 13, 17, 18, 19, 20, and 21, it is earnestly maintained that their determination must follow that of claim 1 for two principal reasons—first, that they describe the same invention or device as claim 1, and that the award to Reed of the interference necessarily carried with it these other claims; and second, that even if they described an invention different from that of claim 1, yet since they are similar to some of Cropp's claims these might have been brought into the interference proceeding, and that the determination of the interference not only adjudicated the claim specifically there in issue, but all other claims common to any two or more of the applications, though not within the scope of the interference claim, which might by appropriate proceedings have been brought into the interference.

As to the first of these contentions: Reed's claim 1 does not in our judgment describe a structure like his other claims (except 2 and 11), which are alleged to be infringed, nor that of Cropp's typical claims 9 and 15. Said claim 1 describes the combination of a revoluble drum, means therein to mix the material, "a continuous series of circularly

arranged pockets located at one end of the drum within its cylindrical wall, enclosed at their outer ends, the open inlets of the pockets being turned toward the axis of the drum," and the circular inner head with its periphery contacting with the tops of the pocket walls. The circular arrangement of the pockets means that they extend about the inner surface of the drum. There is no requirement that they be overlapping or of any particular size or shape, save only that they be closed at the outer end, and open on the side toward the axis of the drum, which means nothing more than their tops shall be open. But the element of a central partition contacting with the tops of the blades is wanting in Cropp's as well as in Reed's other claims, except 2 and 11. We cannot hold that Cropp's diagonal blades, manifestly spaced apart to form pockets, and sufficiently far apart to permit material being forwarded between them, is the equivalent of the inner head of Reed's claim 1. The fact that a drum with a series of diagonal charging blades may be revolved at a speed which will forward the material to be mixed, and while revolving prevent the mixed material from flowing back, is a result which might be accomplished with a single diagonal blade if the drum were revolved fast enough. To the extent that the inner contacting head may have utility in holding the material from overflowing the blades and running back, that element is found in the claim in interference, which is Reed's claim 1, and also in Reed's claims 2 and 11, but is not found in Reed's other claims in suit, nor in Cropp's claims 9 and 15.

It does not appear which of the Reed and Cropp original claims were deemed in the Patent Office to show the equivalent of Sanborn's claim 5, but probably it was those claims in each which described an inner head or partition, whether, as in Sanborn's claim 5, having its periphery contacting with the tops of the pocket walls, or, as in certain of the Reed and Cropp claims, with the periphery contacting with that of the drum. Claim 2 is like claim 1, save only that it shows the inner head as "centrally apertured." Claim 11 describes the blades, and an "apertured disk set in from the front end," and we find in both these claims the equivalent, variously expressed, of invention in claim 1, and therefore included in Cropp's disclaimer, and in the award to Reed of the issue in interference. But, as above indicated, we find that the others of the above enumerated claims of Reed, describing as they do an invention different from that of claim 1, were not so included or determined.

The second contention is predicated upon the general rule that:

"When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented in the first action."

Rule 109 of the Rules of Practice of the Patent Office is cited to show how other claims common to any of the applicants might be brought into the interference, and decisions of Commissioners of Patents and of the Court of Appeals of the District of Columbia are cited to show that under certain circumstances a second interference will

not be allowed in the Patent Office on claims which might have been included in the first. The rule provides that:

"An applicant involved in an interference may, at any time within thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, on motion duly made as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties. Such motion must be accompanied by the proposed amendment, and when in proper form will be transmitted by the examiner of interferences to the primary examiner for his determination," etc.

If it be assumed that the rule has application to claims existing at the time the interference is declared, and is not limited, as its wording might indicate, to claims afterwards first made by amendment, it would seem that neither the rule nor rulings apparently made under it would have application to a case such as this, where disclaimer was filed before time fixed for preliminary statements, in view of rule 107, which is as follows:

"An applicant involved in an interference may, with the written consent of the assignee, when there has been an assignment, before the date fixed for the filing of his preliminary statement (see rule 110), in order to avoid the continuance of the interference, disclaim under his own signature, attested by two witnesses, the invention of the particular matter in issue, and upon such disclaimer and the cancellation of any claims involving such interfering matter judgment shall be rendered against him, and a copy of the disclaimer shall be embodied in and form part of his specification (see rule 182)."

This rule seems to contemplate that the disclaimer shall extend only to the particular claim or claims as to which the interference is declared. To avail of the rule the applicant must disclaim invention "of the particular matter in issue," and must cancel "any claims involving such interfering matter." By implication other claims, involving other interfering matter, remain unaffected, as though no interference had been declared.

Finding, as we do, that Reed's claim 1 does not include the invention shown by his other claims (except 2 and 11), of which infringement is charged, and concluding that these other claims, common as they were with claims of Cropp at the time the interference was declared, are not affected by the determination of the claim in interference, we must look to the evidence which the record discloses to determine whether or not the District Court properly decided the question of priority as between Reed and Cropp, respecting the invention shown in these other claims of Reed, as well as in the claims of Cropp, and which are embodied in the Wahl machines, minus the inner contacting head or ring thereof.

[3] Cropp's application was filed August 8, 1908, and Reed's September 28, 1908. Cropp's patent was granted January 18, 1910, and Reed's January 10, 1911. Each has undertaken to carry back his date of invention, but the evidence on that subject, aside from that afforded by the record in the Patent Office, is too indefinite, inconclusive, and unreliable to warrant the finding that either has shown a date of invention prior to that of the other, and the District Court, which saw and

heard the evidence, made fair estimate of the probative value of their testimony on that subject in saying in its opinion:

"There is nothing worthy of attention in the testimony tending to show any date of the inventions earlier than the respective applications."

It might be said that the situation of the parties as disclosed by the record points more strongly to Cropp as the inventor. He was concerned with the devising and building of concrete mixing machinery, and evidently satisfied Reed that he had ingenuity and ability along that line, else Reed would not have entered into the contract for financing Cropp. Until meeting Cropp, Reed had no experience with concrete machinery, save only that his company sold engines suitable to furnish power for operating mixers. Under the first contract Reed's company was to handle the mixers built and devised by Cropp, and under the second Cropp was to superintend construction, and the company was to manufacture and sell "Cropp mixers." The contracts were drawn by the company, and provided for its exclusive right, for practically the entire world, to manufacture and sell "Cropp's mixers" for the limited period of the contract, and Cropp agreed to protect it against actions for infringement in handling Cropp's "machine" or "devices." In making Cropp's "mixers," "machines," and "devices" the subject-matter of the contract, and conferring on the company exclusive rights in regard to them, the parties must have had in view something definite and distinctive, existent or prospective, as to which an exclusive grant by Cropp might mean something.

To show that Reed had mechanical and inventive genius, a number of earlier patents to him were shown in evidence, all of them in regard to improvements in weighing devices. It does not appear, however, that Cropp had any prior experience in the matter of securing patents, and such was the situation of the parties that, had Reed been so disposed, his far larger experience in such matters would have been helpful in appropriating ideas and developments of Cropp manifested before or during the existence of the contract.

At any rate, a review of the record does not satisfy the inquiring mind that the invention involved in these other claims is that of Reed rather than of Cropp, whose application was first filed and patent first granted; and compelled as we are to look to the filing dates of the respective applications as the most reliable evidence showing priority of invention, we find priority in Cropp as to any invention shown in claims 7, 12, 13, 17, 18, 19, 20, and 21 of the patent in suit, so far as they are readable on the Wahl mixers.

We conclude that both appellees, in making and selling the Wahl mixers, incorporating the inner head or ring D, contacting with the tops of the charging blades or pockets, infringed claims 1, 2, and 11 of the Reed patent, and that as to Reed's claims 7, 12, 13, 17, 18, 19, 20, and 21, in so far as they are readable on the Wahl mixers, as between Cropp and Reed, Cropp is the first inventor of any patentable novelty therein shown.

The decree of the District Court is reversed, and the cause remanded, with direction to the District Court to enter a decree in accordance with the views herein expressed.