## REED v. RANSOME CONCRETE MACHINERY CO. et al.

(Circuit Court of Appeals, Third Circuit. August 1, 1924. Rehearing Denied December 1, 1924.)

No. 3061.

Patents ⬤══328—981,111, for concrete mixer, held void, on the ground that the patentee was not the inventor.

The Reed patent, No. 981,111, for a low-charging concrete mixer, *held* to disclose invention, but invalid on the ground that Andrew J. Cropp, and not Reed, was the inventor.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by Matthew Howard Reed against the Ransome Concrete Machinery Company and others. Decree for defendants and complainant appeals. Affirmed.

Horace F. Baker, of Pittsburgh, Pa., Lindabury, Depue & Faulks, of Newark, N. J., and George L. Wilkinson, of Chicago, Ill., for appellant.

Stephen J. Cox, of New York City, for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing the complainant's bill for the infringement of letters patent No. 981,111, issued January 10, 1911, on the ground that Andrew J. Cropp was the inventor of the concrete mixer of the Reed patent.

It relates to improvements in concrete mixers for mechanically mixing concrete, composed of crushed stone, sand, cement, and water, by the rotation of a cylindrical drum provided with means for receiving these ingredients at the lowest portion of the front end of the drum, for delivering them into the interior, and for preventing their return backwardly. The object of the patent is to provide a mixer into which materials may be charged at the lowermost portion, so as to avoid the necessity of raising them by means of platforms or otherwise before they are poured into the mixer.

There are two specific forms of the low-charging devices of the patent. The distinctive elements of the form embraced in the claims, Nos. 7, 12, 14, 17, and 19, in suit, comprise a rotary mixing receptacle having an interior mixing compartment, a centrally open charging head, and a continuous series of overlapping diagonally arranged blades, forming charging pockets, extending inwardly from the annular charging head, which constitutes a series of walls spaced backwardly, and prevents the mixture from flowing outwardly over a radially narrow annular flange.

With this large central opening in the receiving end of the drum and series of overlapping blades, materials need not be raised so high in order to charge the drum, but may be dumped from a wheelbarrow into the lower front end of the drum over the edge of the narrow flange. "This," said Judge Sanborn in the case of Reed v. Cropp Concrete Machinery Co. (D. C.) 218 F. 643, "enables the workman to wheel the raw material up to the machine and dump it thereinto, or into the charging chute leading inwardly to the front end of the machine, avoiding the necessity of high, steep inclined platforms, or of supplemental skip hoists, or other old arrangements for lifting the material and depositing it in the machine."

The appellees are charged with infringing the claims in issue by manufacturing and selling the concrete mixer known as the "Bantam mixer." They defended on three grounds: The claims are invalid, in view of the prior art; the Bantam mixer does not infringe; and Cropp, not Reed, was the inventor.

The Circuit Court of Appeals of the Seventh Circuit held in two well-considered opinions that Cropp was the inventor. Reed v. Cropp Concrete Machinery Co. et al., 239 F. 869, 152 C. C. A. 653; Standard Scale & Supply Co. v. Cropp Concrete Machinery Co. et al., 256 F. 666, 168 C. C. A. 60. Judge Lynch, from whose decree this appeal was taken, accepted the conclusions reached in the Seventh Circuit, and confined his discussion to the new evidence in this case, which complainant contends distinguishes it from the cases in the Seventh Circuit. He says, however, that the Seventh Circuit erred, and Judge Lynch should not have ac-

cepted its conclusions; but, granting that the conclusions in those cases were right, the new evidence in this case forces a different conclusion.

On August 8, 1908, Cropp applied for his patent, which admittedly disclosed the device comprised in the claims in issue of the Reed patent. Reed filed an application 61 days later, September 28, 1908. The Cropp patent was issued on January 18, 1910, and the Reed patent January 10, 1911. On March 2, 1908, Cropp entered into a contract with the Standard Scale & Supply Company of Pittsburgh, Pa., under the terms of which the Standard Company was to sell in the United States, Mexico, and Canada "concrete mixing machines, devised and manufactured by or under the supervision of" Cropp. Reed was connected with the Standard Company. So it appears that Cropp was at that time engaged in devising and manufacturing concrete mixers for sale by that company.

As we understand it, there is no serious contention that the mixers disclosed by the claims in issue of the Reed patent and the Bantam mixer, sold by the appellees, are not substantially the same. Complainant in his brief says: "The Cropp patent and the Reed patent in suit disclose identically the same invention in a low charge for concrete mixers." We think this is a fair statement of the fact.

The validity of the invention here involved is not questioned. Notwithstanding, if it were apparent that this patent did not disclose an invention, it would be our duty, in order to protect the interest of the public, to declare both the Cropp and Reed patents invalid. The evidence abundantly shows that the central opening in the end of concrete mixers of the prior art was so high from the ground that it was necessary to erect platforms and staging on which to run wheelbarrows in order to charge the mixers. The large central opening, the diagonal blades, and the pockets, preventing the return of the material backwardly in the device of the patent in suit, render the platforms and staging unnecessary without decreasing the capacity of the mixer. There was nothing of this kind in the prior art.

The sole question, therefore, to be determined, is whether Cropp or Reed was the inventor of this device. Without discussing in detail the rather voluminous evidence, it is sufficient to say that there is no evidence of a substantial character showing that Reed had any conception of the invention before Cropp filed his application. The direct as well as the circumstantial evidence indicates that Cropp first conceived the ideas disclosed in the Reed patent.

As to the effect of the new evidence offered in this case, we are in accord with Judge Lynch, and adopt his opinion as expressing our views.

The decree is affirmed.