CRAWFORD v. FAYETTEVILLE LUMBER & CEMENT CO.

(Circuit Court of Appeals, Eighth Circuit.  February 16, 1914.)

No. 4022.

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—LIABILITY OF MASTER.

Plaintiff was manager for and the local representative of defendant, a foreign corporation.  The buildings in defendant's lumber yard were in process of removal to a new location.  One of its employés, other than plaintiff, charged with superintending such removal and in the necessary accomplishment thereof, cut a second story platform in two, supporting the portion left behind by adequate props.  Subsequently, but after such employé's connection with the matter had ended, and when the superintendency of the premises had again devolved solely upon plaintiff, one or more of such supports, by some means undisclosed by the proofs, were removed.  Plaintiff went upon the platform, and, thus unsecured, it gave way, and he was injured.  *Held,* that any negligence in the matter was plaintiff's, since he was the sole representative of the defendant on the ground, and, being charged with the responsibility of its business, any duty of discovering the changed condition of the platform and of guarding against it devolved upon him.  *Held,* further, that under such conditions an instruction to the jury to find against him was properly given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Frank A. Youmans, Judge.

Action by Joseph F. Crawford against the Fayetteville Lumber & Cement Company, a corporation, for personal injuries.  Judgment for defendant, and plaintiff brings error.  Affirmed.

Thompson & Smith, of Sapulpa, Okl., for plaintiff in error.
J. E. Thrift, of Bristow, Okl., for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

POPE, District Judge.  This is a suit for personal injuries brought by the plaintiff in error, Crawford, against the defendant company, for injuries sustained in the latter's lumber yard at Sapulpa, Okl. The company's principal place of business was at Fayetteville, Ark., and plaintiff was its local manager and chief representative at Sapulpa when the injury occurred.  At the time of the injury the defendant's lumber yard at Sapulpa, including not only the lumber but the buildings, was being moved to another location a few blocks distant. The moving of the building and sheds was under a contract with one Ed Roney, and the moving of the lumber and other stock on hand was given by contract to one Proctor.  The old yards from which the buildings were being moved consisted of buildings surrounding what was practically a court.  The office building was at the northwest corner of the yard, and had two stories, with two rooms upon the ground floor and one or more rooms on the second floor.  The front or west room on the ground floor was used as an office, having two out doors,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one opening west on Park street and the other south into the court. The east room on the ground floor of the office building was used for the storage of glass, paint, and other material. The room (or rooms) on the second floor was also used for storage, containing sashes, doors, columns, window frames, and similar material, and being also occupied as a bedroom for an employé of the defendant named Lowdermilk. Just outside of the door opening from the first story of the office building south into the court there was a platform from which went an open stairway to the landing at the entrance of the second story of the office building. This landing or platform extended eastward, not only to the east end of the office building, but beyond that into and through the length of a lumber shed which adjoined the office building on the east, and this platform, thus common to both buildings, constituted the upper walking space from which materials were handled in and out of the upper deck of the lumber shed, and was also the means by which access was had to the room on the second floor of the office building. This landing or platform was composed of 2x6 boards lying lengthwise, five abreast, about an inch apart. It was supported by arms projecting underneath at intervals from the lumber sheds, except that the portion which was adjacent to the office building and formed the landing at this place was supported by the ends resting on and being nailed to the top of the stairway proper. In the course of the work of moving the buildings from the old to the new yard it was deemed desirable to move the lumber sheds in advance of the office building, and to that end it became necessary to disconnect such sheds from the office building at the west, and by cutting these sheds into appropriate sections to facilitate their being moved and to preserve them in convenient size for reinstallation at the new site. It thus became requisite, in moving the lumber shed away from the office building, to cut the platform at the junction of the shed and building. The effect of this cutting without more was to leave so much platform as remained adjacent to the office building, a length of some 10 feet, with no support other than the stairway which held up the end of the platform furthest westward from the cutting; the other supports being, as we have seen, a part of the sheds, and being removed by the cutting of the platform. After the disconnection of the shed from the office building by cutting the platform in the manner just mentioned, the office building was placed on rollers and pushed a foot or two west from the shed, so as to clear the way for the exit of the latter. The office building remained on rollers after being so moved until after the injury here involved. The sawing of the two buildings apart was about the 15th day of October, 1911. The actual work of sawing was apparently done by employés of Roney who, as we have above seen, had the contract to move the several buildings from the old location, but the place where it was to be severed was indicated to the contractor by one C. R. Robertson, representing the defendant company, who had been sent from Fayetteville to assist in the removal. Robertson upon this particular occasion arranged for the support of the platform following the severance by the following course: He placed a 2x4 under the end of the platform where it had been

sawed apart and perpendicular to the building. The end of the 2x4 nearest the building was supported by another 2x4 nailed underneath to the building, and the end furthest from the building and corresponding to the outer edge of the platform rested upon and was supported by an upright piece, probably 2x4, which was nailed to the platform at the upper end and rested upon the ground underneath. Thereafter, the office building having, as above stated, been placed on rollers and pushed forward a short distance, the upright was thereby to some extent thrown out of plumb, in view of which Robertson personally nailed the lower end of the upright to the lower platform. Within a few days after this Robertson was recalled to Fayetteville by the company, and the plaintiff Crawford left in sole charge of the yard until after the injury. This latter occurred about 7 o'clock on the evening of October 26, 1911, and about eight days after Robertson left. On the occasion of the injuries plaintiff went up the stairway and onto the platform to close the door of the upper room. The platform gave way, throwing him to the ground.

The court below directed a verdict in favor of the defendant, and three assignments of error are here made. The first and principal one is that the court erred in directing a verdict for the defendant. The other assignments relate to an alleged erroneous exclusion of evidence, and to an alleged untenable ground given by the court below, to wit, the assumption of risk, in instructing a verdict for the defendant. If the court was right as to the first ground the other assignments, even if well taken, would not change the result. The evidence rejected, even if admitted, was not of this degree of materiality, and as to the other ground, even if the court's reason was wrong, the case would still be for affirmance if its conclusion was right.

We proceed, therefore, to consider whether upon the whole case there was any basis for a verdict favorable to the plaintiff. Much of defendant's argument both here and apparently in the trial court was upon the ground that, while the plaintiff's case proceeds upon negligence of Robertson in failing properly to secure the part of the platform left next to the office building, there is no allegation in the petition that it was any duty of Robertson to look after this. It is said that his sole duty as alleged was to superintend the removal and that nothing is alleged as to any duty, in effecting such removal, to leave the premises safe. It is contended that any breach proved is thus of a duty not alleged against him, so that a recovery is being sought outside the pleadings. It is also said that the proofs, equally with the pleadings, fail to show any employment or duty covering the condition of the portion of the platform left behind. To the argument that his alleged principalship in this particular matter receives support in the fact that he actually attempted to make such part of the platform safe by placing the supports above mentioned, it is answered by the defendant that what he did was, according to plaintiff's own testimony, upon the express request of plaintiff, and that the latter thereby recognized a joint responsibility with Robertson in the matter.

We do not find it necessary, however, to consider the question of how far the pleadings allege or the proofs show Robertson to have

been the representative of defendant in making the platform secure after the lumber shed had been cut from the office building. We assume for all purposes of the case that Robertson was the defendant's representative in this very matter. But, this much conceded, we still find the plaintiff not entitled to recover because of the following state of facts, which we deem conclusive against plaintiff's case.

As has been above stated, Robertson at the time of the severance of the platform provided for its being upheld by personally nailing a timber at right angles to the office building and underneath the platform and supporting this on the side next the office by an upright nailed thereto and on the side away from the house by an upright, which was nailed to the lower platform. We state these to be the facts as proved for the reason that we deem them substantially uncontroverted in the proofs. Robertson and Barnes, witnesses on behalf of the defendant company, so testified, as did Roney, who was a witness for the plaintiff. These three witnesses show definitely that this was done when the two buildings were separated. There is no testimony by the defendant contradicting this. It is true that there is a general statement by the plaintiff Crawford in his testimony to the effect that there never were any uprights under the platform. But this was viewed by the court below, and we believe properly in the light of all the testimony of Crawford, as referring to conditions prior to the separation of the buildings, and not during the 10-day interval between that separation and his injuries. Indeed, as to this latter interval Crawford testified quite clearly that he had no knowledge of the surrounding conditions. In the brief filed for him in this court it is stated:

"He, plaintiff, states that he did not see any brace or support there. *That in fact he never looked.*"

We adopt this as a fair statement of plaintiff's testimony, which is the only testimony in the record that has a semblance of making an issue upon the placing of this support under the platform by Robertson. We are of opinion that the negative statement of plaintiff that he did not see this support, diluted even further as that is by the statement that he never looked, does not make a substantial issue against the positive testimony as to the existence of this upright. We must therefore assume as undisputed that an upright was placed under the platform and nailed by Robertson at the time the platform was cut. We next come to the further undisputed fact that this platform was, at the very time of its being thus secured, used, according to the testimony of the plaintiff's witness Roney, by a man who was sent up on the roof to tear the flue down, and that it was thereafter used daily by the employé Lowdermilk, who occupied the upper room as a bedroom. There is further uncontradicted testimony that when the platform fell, causing plaintiff the injuries sued for, there was no support thereunder upon the corner away from the house. We have thus, even assuming Robertson to have been the representative of the company, the following situation: A support was placed under the platform; that support, as shown by the use to which it was subjected, was reasonably safe for the purposes of upholding the platform; such support was, by some means not disclosed by the evidence, thereafter removed, and plaintiff

was hurt. To whom is the responsibility for not discovering this changed condition to be attributed? Certainly not to Robertson, for the utmost that can be or is claimed against him is that he was charged with the duty of securely fastening the platform after disconnecting it from its old support. . There is no contention, either upon pleadings or upon proofs, that he was charged with maintaining this in a safe condition, for, as we have seen, his employment was special and temporary, and had no connection with the regular business of the company. But if Robertson was not charged with this duty, the only other person on the ground who was charged was Crawford, for, as we have seen, he was the local manager and representative of the company. This becomes impressively clear when we learn from the record that Robertson, almost immediately after this cutting of the platform, was recalled from Sapulpa to Fayetteville, leaving Mr. Crawford as the sole representative of the company in Sapulpa. This summoning of Mr. Robertson was by letter from the president of the company at Fayetteville to Mr. Crawford, the plaintiff, dated October 18, 1911, in which he says (italics ours):

"I have written Mr. Robertson to come to Fayetteville at once as I learn that the moving business is going rather slow. And that as it is Mr. Robertson will not be able to do anything soon in the way of permanent work on the finishing of the shed. So I thought it best that he come to Fayetteville, as we are having a good business here. And the millwork is getting behind. And I also thought that as it now is at Sapulpa with the business dropping off that you would be able to give this moving matter all of the attention that it would likely need, and when the sheds are moved and loaded as the contract calls for with the parties that are doing the moving then it will be a small job to get someone to fix the roof of the shed. *So I will now leave this matter in your hands.*"

It resulted from this letter that, not only by reason of his position as local manager, but by express terms, the whole business was upon Robertson's withdrawal left in plaintiff's hands. If, therefore, as necessarily followed from the proofs above outlined, there was a removal of the support to the platform by some unknown cause during the 10 days intervening between Robertson's withdrawal and plaintiff's injury, the duty of knowing that such existed was upon the plaintiff as the company's responsible representative upon the ground. The platform was within a few feet of the office where plaintiff was conducting the business of the company, and within a short distance of the door through which plaintiff was repeatedly passing in the performance of that duty. If, as must necessarily have been the case, it was during this interval that the platform became unsafe, plaintiff, as the representative of the company present for the purpose of keeping its affairs in proper shape, was the one charged with ascertaining and remedying such condition. Upon him, and upon no other employé, rested the duty of inspection in order that life and limb of himself and of others going upon this platform might not be jeopardized. That he instead of another received the injuries renders him the unfortunate victim of his own oversight. Certainly to hold that a representative of the company, who has failed to discover an easily ascertained defect contrary to a duty resting upon him to so discover, can recover for injuries resulting

therefrom would be to overlook the ancient principle, founded alike in morals and in law, that no one may profit by his own wrong.

It should be said in conclusion that this disposition of the case is not upon any principle of assumed risk. We accept plaintiff's position that he had not noticed the absence of this support placed there by Robertson on or about October 15th, and that he thus did not realize the danger involved in his going upon the upper platform thus unsupported. Thus viewing the matter, the doctrine of assumed risk does not apply, since that involves, not only knowledge of the situation, but appreciation of the danger. We hold, however, against plaintiff upon the ground that it was his duty to have known of the removal of this support, and his failure so to know made his injury, in effect, self-inflicted, and he cannot subject his principal, the defendant company, to an action of damages for his own wrong.

The judgment is accordingly affirmed.