PRICE *v.* TAYLOR.

(In Banc. April 28, 1941.)

[1 So. (2d) 784. No. 34140.]

**Means Johnston** and **H. T. Odom**, both of Greenwood, for appellant.

Creekmore & Creekmore, of Jackson, for appellee.

Jordan, Antoon & Peteet and Denman & Everett, all of Greenwood, for appellee.

**McGehee, J:,** delivered the opinion of the court.

While employed as general superintendent in charge of the work under a highway beautification contract on the Itta Bena-Morgan City road in Leflore County, Mississippi, the appellee, S. C. Taylor, was furnished a used pick-up truck by the appellant, J. E. Price, doing business as Okeechobee Construction Company, of Jacksonville,

Florida, for use in connection with the duties of such employment. On account of having sustained severe personal injuries while driving this truck on his return trip to Greenwood after coming to Jackson on business pertaining to his employment on a similar project at Meridian, Mississippi, the appellee recovered the judgment here appealed from, the ground of the alleged liability being the failure of his employer to furnish a reasonably safe vehicle for his use.

The proof discloses that the terms of the original employment were that the appellant should execute contracts for the work in Mississippi in his own name, furnish the liability and performance bonds, and finance the entire operations; that the appellant should receive one-half of the profits derived from the performance of the work, and that L. W. Malone, who procured the employment of the appellee by the appellant, should receive a salary of $25 per week and twenty-five per cent of the net profits; and that this should likewise apply to the compensation of the appellee. The first work obtained was the project at Meridian, Mississippi, where the work was commenced during April of 1938. The appellee was general superintendent in charge of the work under that contract; and when it was nearing completion two additional contracts were obtained, one of which was on the Batesville-Hickory Flat road where Malone was placed in charge as superintendent, and the other on the Itta Bena-Morgan City road where the appellee was given general supervision with the right to purchase grass for sodding purposes, hire and fire employees, rent teams and equipment needed in addition to that furnished by the appellant, and had full authority to superintend the work, it being shown that appellant remained at Jacksonville, Florida, and undertook to exercise no authority or supervision over the work except to make trips, at intervals, to Leflore County for the purpose of meeting the necessary payrolls.

It was further shown that about the first of July, 1938, Malone and the appellee, Taylor, went to Jacksonville for an interview with the appellant, Price, in connection with the contract work in Mississippi, at which time the truck in question was purchased by Price at Jacksonville for Taylor's use. Before the truck was delivered to Taylor, an attempt was made by Price to have it put in a reasonably safe condition for use, Taylor having testified that "they worked on it pretty well all day." He also testified, however, that he objected to the truck on account of its being dirty and in a dilapidated condition, but when asked his specific objection to it, he replied "generally— of course, I am no mechanic; I didn't examine it" but that "it didn't have any lights or possibly any brakes." On the next day Taylor and his wife drove the truck to Meridian and then later used it on the Itta Bena-Morgan City work, which was begun during the early part of July, 1938.

He made no further complaint directly to Price of any defects that would render the truck unsafe for use although Price visited the projects at intervals to meet the pay-rolls, but continued to use the same on the Itta Bena-Morgan City road work and had repairs made thereon from time to time over a period of nearly three months, until he was injured on the night of October 2, 1938. These repairs were charged to the Okeechobee Construction Company, and the bills were sent to Price as a part of the pay-roll and were always paid without question. On September 7, 1938, Price went to Greenwood to meet a pay-roll, arriving one day earlier than he was expected to come, and found that Taylor was not on the job, but that he was at work, with Price's equipment, on a private contract of his own near Schlater, in Leflore County. A serious disagreement followed, with the result that Price summoned one of his former employees, Mr. F. C. Littleton, from somewhere in Tennessee, and placed him on the job to look after his interest. It was then agreed that Malone should have fifty per cent of the profits on the

Batesville-Hickory Flat road contract, and that Taylor should continue on the Itta Bena-Morgan City road contract at his salary of $25 per week and should receive one-half of the profits to be derived from that work; and as we understand the testimony, Taylor was without means to provide other equipment to complete his own private contract and it was agreed that he could pay rent on Price's equipment for the time he had used it on his private contract, and that he might continue to use it in the completion thereof by paying rent, but with the understanding that he would purchase the equipment at the invoice price when final settlement was made on the Itta Bena-Morgan City contract out of his part of the proceeds. Littleton remained on the job from September 7th to September 24th, 1938, and when he left on that date he took a receipt prepared by Taylor on the typewriter for all of the equipment, listing it, including the truck in question, in which the following statement was contained: "The above equipment to be paid for by me when I have a settlement with the Okeechobee Construction Company, this settlement to be when we have received final estimates on the work that has been between us." This instrument was signed by S. C. Taylor and attested by F. C. Littleton.

It was contended by Taylor, in substance, that this receipt was given to relieve Littleton of any further responsibility on account of the equipment, and that it did not pass the title. He admitted, however, that he had formerly agreed with Price, as heretofore stated, that he would purchase the equipment at the invoice price when final settlement was received for the work on that project.

However, in view of the conclusion that we have reached in the case, it is unnecessary to determine the legal effect of this agreement in regard to whether this truck had been purchased by the appellee at the time of the accident on October 2, 1938. It is sufficient to say that it was at least in his possession and under his control

on that day under a contract of purchase. After the accident the employees of Taylor continued to use the equipment on his private contract until October 22, 1938, and for which he says he considers himself obligated to pay the standard rent, pursuant to his agreement with Price during the early part of September that he would purchase it whenever final settlement was made upon the Itta Bena-Morgan City road contract. He later rented it to A. Guthrie Company, a contractor, and had his wife write Price, on November 7, 1938, for his approval, but received no response. In that letter it was stated "since my accident, I do not know whether I will be able to take over equipment or not."

But be that as it may, the decision here may safely rest upon the determination of the issue as to whether Taylor had authority to have such repairs made on the truck as were necessary to keep it in a reasonably safe condition during the time he was using it. While he testified that he did not have such authority, he nevertheless admitted that he did have repairs made on it from time to time at the expense of Price and that the bills were paid in each instance without being questioned. The truck was used almost exclusively by him for three months, and his testimony, as well as that of his witnesses, shows, beyond any doubt, that he knew that the truck was difficult to steer or guide, due to the fact that the front wheels thereof set out at the bottom, and this is alleged to be the cause of the accident complained of.

A mechanic, a witness for Taylor who worked on the truck, testified to this particular defect, and when asked whether he told Taylor about it, replied that "he saw it." When testifying about the bad condition of the truck, Taylor said that "it was general knowledge between all of us—Mr. Jacks and myself." The mechanic further testified that the defect could have been remedied by putting in a new front axle at an expense of $12. The old axle sagged and caused the wheels to set out at the bottom and make the truck difficult to steer or guide; and it

was this condition that the mechanic said Taylor had seen.

It is urged, however, that since Littleton was on the job between September 7th and 24th, 1938, the truck could not have been repaired without his permission, and that such repairs as were made during that time were made under his authority. When Taylor was asked ''What authority did he have over you and the other men on the job?'', he answered, ''Well, so far as the actual running of the job out there, there was no material change, except we knew he was sent out there by Mr. Price to look after the Okeechobee Construction Company's interest. In fact, he was over me, especially when it come to buying and okaying the pay-rolls and everything like that.'' He admitted that he continued, with full authority, to buy the necessary sodding grass, hired and fired employees, and had general supervision over the work. It was shown also that after Littleton left his employment there on Sunday, September 25, 1938, thinking that the work was finally completed, the engineers declined on the next day to finally accept the project until the grass should be watered, etc., and Taylor worked during the three following days so as to comply with these requirements; that during this time he assumed to proceed with the work in full charge as superintendent, and that on the next day after Littleton left, he had repairs done on the truck at the expense of Price in the sum of $20.70.

Thereafter, on September 30th, Taylor received a special delivery letter from Price suggesting that he go to Meridian to check an error in the yardage on that project. He was not instructed as to whether he should go by bus, train, or in this truck. He left promptly in the truck for Jackson on that Friday afternoon and visited the headquarters of the State Highway Commission on the next morning, discovered the alleged error, and reported it to Price. He then remained in Jackson until Sunday afternoon, and then while returning to Greenwood, accompanied by his wife, he met another vehicle on the highway

near a bridge on a gravelled road at seven or eight o'clock that night, which failed to dim its lights, and he then put his foot on his brakes, passed it, and cut back in the road, but was unable to properly steer or guide the truck and it struck the railing of the bridge on his left side, went down an embankment, causing the injuries herein sued for. He testified that he had no trouble with the truck on his way down to Jackson, and he had frequently used it on trips to Jackson to spend the week-end with his wife.

Numerous decisions are cited on the question thus involved, and it is the contention of the appellee that the non-delegable duty of the master to exercise reasonable care to furnish the servant with a reasonably safe appliance cannot be abrogated by entrusting the servant with the duty of inspection and repair, except as to simple tools. This point is well taken as to a servant vested with no authority to have repairs made by some competent workman at the expense of the master, and who is not competent to make the repairs himself, and who has not been employed for the purpose of keeping the appliance in repair. Nor can the master delegate to a fellow servant the duty of keeping an appliance in a reasonably safe condition for use by other employees. But a different rule applies when the servant making the complaint is the general superintendent of the work in the absence of the employer and representing him, with full authority to have the necessary repairs made so as to render the appliance reasonably safe for his use, whether such authority to have the repairs made is established by a general course of conduct or dealings acquiesced in by the master, as in the case at bar, or has been expressly granted under the terms of the employment. In the instant case, where the master lived several hundred miles away, any complaint from an employee about the defective condition of an appliance would necessarily have been referred by the master to the superintendent for his attention, and which procedure would occasion delay in the due

progress of the work. The master is not required to personally employ the expert to make the repairs. He may delegate such authority to a vice-principal, either expressly or impliedly. The rule is more aptly stated in the case of Morris & Co. v. Thurmond, 262 F. 384, 385, decided by the Fifth Circuit Court of Appeals, than in any other decision called to our attention, and wherein there was a suit for the death of the plaintiff's intestate caused by the defective condition of an automobile furnished to him by his employer, and the court said: "The defendant could escape liability for the intestate's death, if due to its negligence in not correcting the defects, only by showing that it had imposed upon the intestate the exclusive duty, for it, of inspecting the car, determining when it needed repairing, and, when found to need repairs, of taking the car to the garage and having the repairs made. It would also have to show that the defects were discoverable and repairable defects, which could have been remedied, so as to make the car safe to run." And further that:

"The master's duty of furnishing safe appliances is not delegable to a fellow servant of the injured employé; but this is far from saying that the master cannot delegate to the injured employé the duty of inspecting and causing to be repaired an appliance furnished to him for his use, and which from the situation must necessarily be in his exclusive possession and control, and that when the only negligence charged against the employer is that of the injured employé the employer may still be liable to him for injury. In the case of Pioneer Mining & Manufacturing Co. v. Thomas, 133 Ala. 279, 32 So. 15, the Supreme Court of Alabama approved the following language from the brief of appellee in that case:

" 'We recognize the rule that if the injured employé is himself the agent through whom the employer undertakes the responsibility of seeing that the ways, works, machinery, and plant are in proper condition he cannot complain of personal injuries sustained by him by reason

of a defect in the condition of such ways, works, machinery, or plant.'

"To the same effect are the cases of Great Northern Railway Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Owl Creek Coal Co. v. Goleb [8 Cir.], 210 F. 209, 127 C. C. A. 27; Crawford v. Fayetteville Co. [8 Cir.], 212 F. 107, 128 C. C. A. 623."

This principle of law was recognized by this court in Texas Co. v. Mills, 171 Miss. 231, 156 So. 866, 870, when it was said: "The master's duty to furnish his servants with safe instrumentalities with which to do their work is not a contractual, but a common-law, duty, which the master cannot delegate to another. The one exception, if exception it be, to this rule, is that a servant injured by a defect in an instrumentality which he himself had contracted to furnish or which he himself had contracted to keep in repair, relieves the master of any duty to him relative thereto."

Applying the rule to the facts of this case, the conclusion is, in our opinion, inescapable that the plaintiff, who had the almost exclusive use and control of the truck, was in better position to learn of the defects that rendered it not reasonably safe for use than the defendant who lived in another state, and that he had full authority arising out of the course of dealings between the parties, as disclosed by the evidence on his behalf, to have the necessary repairs made when needed; that the employer, so far as the testimony shows, had never seen the truck subsequent to its delivery to the plaintiff at Jacksonville, Florida, nor was his attention ever called to any defects that may have developed after it was repaired at Jacksonville as aforesaid; that Littleton did not supersede the plaintiff in authority as to the matter of determining when repairs should be made to the equipment used in carrying on the work, but was sent there for the special purpose of seeing that the time of the employees was correctly kept and that the moneys advanced by Price should go into that particular job. That even if we should be mistaken in

our conclusion as to Taylor's authority while Littleton was employed, then it is shown, without dispute, that Taylor assumed full control to complete the additional work required after Littleton left; having repairs made on the truck in question on the following day, and that the accident occurred thereafter while Taylor was returning home from a business trip in connection with the project at Meridian, where he was the superintendent, and with which Littleton had nothing to do.

We express no opinion as to whether the action of the court below was correct in sustaining the demurrer to the plea in abatement, which raised the question of the defendant's immunity from process at the time the summons was served upon him, since our decision holding that the defendant was entitled to the requested peremptory instruction will finally dispose of the case.

Reversed, and judgment here for appellant.